735 A.2d 654 (1999)
COMMONWEALTH of Pennsylvania, Appellee,
v.
E.M., a juvenile, Appellant.
Commonwealth of Pennsylvania, Appellee,
v.
Christopher Hall, Appellant.
Supreme Court of Pennsylvania.
Argued April 30, 1998.
Decided July 21, 1999.
*656 A. Charles Peruto, Philadelphia, Scott J. Davis, for E.M.
Barbara A. Kaner, Sr. Dep. D.A., Stephen B. Harris, Chief/Appeals, Alan M. Rubenstein, D.A., for Com.
Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ. *655

*657 OPINION

NIGRO, Justice.
In this consolidated appeal, Appellants contend that the Superior Court improperly upheld the trial court's denial of a motion to suppress physical evidence obtained pursuant to a stop and frisk. We agree and therefore, reverse.
Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Commonwealth v. Cortez, 507 Pa. 529, 532, 491 A.2d 111, 112 (1985), cert. denied, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985). When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Id. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. Id.

FACTS
Commonwealth v. E.M.
In Commonwealth v. E.M., the trial court found that on October 7, 1995, Appellant E.M., a juvenile, and O.T., also a juvenile, were attending a football game at Council Rock High School. At approximately 1:30 p.m., William Rick, a security guard at the school, observed the two juveniles go underneath the bleachers to a darkened area, where there were no concession stands, restrooms or other spectators. Rick approached the juveniles behind the bleachers and asked what they were doing. O.T. responded, "Just smoking, Mr. Rick." Rick then asked the juveniles to come out from under the stands.
As the juveniles came out of the bleachers, Corporal Bruce McNickle and Corporal Stephen Meyers, both Newton Township police officers, arrived.[1] The officers asked the juveniles what was happening, and O.T. responded that they were smoking. Since there is a non-smoking policy at the school, Corporal McNickle ordered O.T. to get rid of the cigarette.
Corporal McNickle testified that, at this point, he noticed plastic bags of what appeared to be marijuana bulging out of O.T.'s jacket pocket. Corporal McNickle then reached into O.T.'s pocket and pulled out two bags that contained a substance which was later confirmed to be marijuana. At that time, E.M. was standing next to O.T.
Corporal Meyers then noticed a bulge in E.M.'s left front pants pocket, which he testified could have been "characteristic of a small semi-automatic, .22 or .25," N.T., 11/6/95, at 23, and proceeded to pat E.M. down. Meyers' pat down revealed that the bulge was soft. Although Meyers testified that he knew it was not a weapon, he felt that the bulge could be contraband. As a result, he reached into E.M.'s pocket and pulled out a large bundle of money. He proceeded to search E.M.'s other pockets and removed what appeared to be acid tabs wrapped in foil from E.M.'s left rear pocket and a small glassine packet of pills from his right rear pocket.[2] Both E.M. and O.T. were arrested.
E.M. was charged with possession of a controlled substance, possession with intent to deliver and criminal conspiracy. On November 1, 1995, E.M. filed a motion to suppress, claiming that the fruits of the pat down and subsequent search were obtained pursuant to an illegal investigative stop and frisk and that the subsequent search was unconstitutional. The trial court denied the motion and adjudicated E.M. delinquent. On appeal, the Superior *658 Court affirmed, finding that the investigative stop and frisk was valid and that the officer had properly recovered the money and drugs pursuant to the `plain feel' doctrine. Judge Schiller dissented, finding that "once the officer determined that the bulge was not a weapon, and was not contraband, he had no authority to conduct a search because he had no probable cause justifying such a search." Slip Op., No. 541 (Pa.Super., Dec. 12, 1995) (Schiller, J., dissenting).
E.M. filed a Petition for Allowance of Appeal. We granted allocatur to determine whether the investigatory stop and frisk of E.M. was proper and whether the Superior Court properly applied the plain feel doctrine to the circumstances of this case.
Commonwealth v. Hall
In Commonwealth v. Hall, the trial court found that on March 6, 1991, at approximately 12:30 a.m., Philadelphia Police Officer Michael Kopecki and his partner were on routine patrol eastbound on Reger Street. When they arrived at the intersection of Reger and Portico Streets, Officer Kopecki saw three males standing about eighty feet away. One of the three males was Appellant Hall, who was standing two feet away and to the right of the other two males. Officer Kopecki testified that Hall was holding a sandwich baggie in his hand which appeared to be full, though he could not see the contents of the bag. The officer observed Hall motion towards the other two males, who then engaged in a single transaction, exchanging currency for a small, unidentifiable object. Officer Kopecki, however, "was unable to see what that transaction was." N.T., 11/27/95, at 9. While he did see Hall motion towards the two males making the transaction, the officer did not see any exchange or conversation between Hall and the two males.
As the officers pulled up to the corner, Hall put the baggie into his left coat pocket and began walking away. When Officer Kopecki ordered Hall to stop, Hall quickened his pace and ran into an alley. The officer pursued Hall and stopped him approximately thirty feet into the alley. Officer Kopecki testified that he patted Hall down, "feeling the left pocket, which I observed him put the bag in." N.T., 11/27/95, at 14. Although he knew that the baggie did not contain a weapon, Officer Kopecki grabbed and squeezed Hall's left pocket. Id. at 17, 23. He felt something "bulky, crunchy" and claimed that, based on past experience, it felt like vials. Id. at 14-15. He further testified that, after he grabbed and squeezed Hall's pocket, he immediately recognized the baggie as containing drugs. Id. at 14, 17. After removing the bag and discovering vials filled with what appeared to be cocaine, the officer conducted a further search of Hall and recovered a pager and some money. Hall was arrested and charged with possession with intent to distribute a controlled substance.
Hall filed a motion to suppress, which the trial court denied. Following a non-jury trial, Hall was convicted of the charges and sentenced to a term of imprisonment of one to two years. On appeal, the Superior Court affirmed the judgment of sentence. The court found that the officer had conducted a valid investigatory detention and protective frisk of Hall and had properly recovered the drugs pursuant to the plain feel doctrine.
Hall filed a Petition for Allowance of Appeal. We granted allocatur to determine whether the investigatory stop and frisk of Hall was proper and whether the Superior Court properly applied the plain feel doctrine to the facts of this case.[3] Based on the similarity of the issues, this appeal was consolidated with Commonwealth v. E.M.

*659 DISCUSSION
We must first address Appellants' claim that the officers in their respective cases did not possess the reasonable suspicion necessary to justify subjecting them to an investigatory stop and frisk.
It is well established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); Commonwealth v. Lewis, 535 Pa. 501, 509, 636 A.2d 619, 623 (1994). An investigatory stop subjects a person to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Commonwealth v. Ellis, 541 Pa. 285, 294, 662 A.2d 1043, 1047 (1995). Such an investigatory stop is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational inference derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion. Commonwealth v. Murray, 460 Pa. 53, 61, 331 A.2d 414, 418 (1975).
If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons. Terry, 392 U.S. at 24, 88 S.Ct. at 1881; In the Interest of S.J., 551 Pa. 637, 713 A.2d 45, 48 (1999) (opinion announcing judgment of the Court); Commonwealth v. Melendez, 544 Pa. 323, 329 n. 5, 676 A.2d 226, 228 n. 5 (1996); Commonwealth v. Hicks, 434 Pa. 153, 158-59, 253 A.2d 276, 279 (1969). In order to justify a frisk under Terry, the officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968). Such a frisk, permitted without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Minnesota v. Dickerson, 508 U.S. 366, 373, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334 (1993) (quoting Terry, 392 U.S. at 26, 88 S.Ct. at 1882).
In Appellant Hall's case, the Superior Court concluded that Officer Kopecki had the requisite reasonable suspicion to conduct an investigatory detention of Hall, reasoning:
Instantly, Officer Kopecki clearly possessed the requisite reasonable suspicion that criminal activity may have been afoot. He encountered Appellant at 12:30 a.m.; Appellant was located in a high drug area; Appellant was carrying a plastic baggie which is typically used to transport drugs; Appellant's companions engaged in a street-level transaction after Appellant attempted to flee from the police.
Slip Op., No. 281 at 4 (Pa.Super., March 5, 1997).
Under the totality of the circumstances in this case, we agree that Officer Kopecki reasonably concluded that criminal activity was afoot. During the course of his patrol in a high crime area, in which he had previously made several drug-related arrests, Officer Kopecki saw Hall holding a baggie at waist level and making a motion towards the two males who were standing approximately two feet away from Hall. He observed the two males engage in a single transaction. Officer Kopecki further testified that Hall, after looking in the direction of the approaching police car, put the baggie in his pocket and began walking away, quickening his pace into a run when the officer ordered him to stop. Under the totality of these circumstances, we find no error in the Superior Court's conclusion that Officer *660 Kopecki had the requisite reasonable suspicion to conduct an investigatory stop of Hall.[4]
The facts of this case also establish that Officer Kopecki was justified in subjecting Hall to a frisk for weapons. Officer Kopecki was in a high-crime area, after midnight, and had just observed activity he suspected of being drug-related. Hall's subsequent flight forced Officer Kopecki to confront Hall alone, in an alley, approximately forty feet away from his partner. Given the totality of these circumstances, we agree with the Superior Court that Officer Kopecki had the requisite suspicion to frisk Hall for weapons. See Hicks, 434 Pa. at 158-59, 253 A.2d at 279 (officer may conduct frisk a suspect's outer clothing for weapons if he reasonably concludes that the person with whom he is dealing may be armed and dangerous); Terry, 392 U.S. at 27, 88 S.Ct. at 1883 (frisk for weapons is justified if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger").
Hall argues, however, that even if Officer Kopecki had reasonable grounds to stop and search him for weapons, the officer's frisk exceeded the scope of a permissible pat-down. We agree.
While Officer Kopecki initially asserted at Hall's suppression hearing that he patted Hall down for his safety, he later candidly testified that he frisked Hall because he wanted to see if the baggie placed in Hall's pocket contained drugs. N.T., 11/27/95, at 23, 25. He testified that he knew the baggie was not a weapon. Id. at 23. In summarizing Officer Kopecki's testimony regarding the purpose of the frisk, the trial court stated:
I think his answer was very specific. He thought what hewhen he saw this plastic sandwich baggy, he thought it was drugs. And when he saw him put the drugs in his pocket, he was going to find out whether or not they were drugs. And when he patted him down, his primary purpose in patting him down was to get to feel that bag to see if what he originally believed was right.
*661 Id. at 26. Officer Kopecki specifically agreed with this analysis. Id.
This testimony clearly reveals that the officer's search of Hall was outside the scope authorized by Terry. Terry specifically held that when an officer is justified in believing that the individual whose suspicious behavior he is investigating is armed and presently dangerous to the officer or to others, the officer may conduct a frisk of the suspect's outer clothing to determine whether the person is in fact carrying a weapon. Terry, 392 U.S. at 24, 88 S.Ct. at 1881; Hicks, 434 Pa. at 158-59, 253 A.2d at 279. Since the sole justification for a Terry search is the protection of the police and others nearby, such a protective search must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Terry, 392 U.S. at 26, 88 S.Ct. at 1882. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence. Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed. Sibron, 392 U.S. 40 at 65, 88 S.Ct. at 1904, 20 L.Ed.2d 917.
Applying these principles to the instant case, it is clear that the officer's frisk of Hall was not within the scope authorized by Terry. By searching Hall's pocket to determine if it contained drugs, the officer's search necessarily went beyond what was necessary to determine if Hall was armed. While Terry and its progeny legitimately allow officers to frisk a suspect for weapons when they have an articulable and reasonable suspicion that the suspect is armed and dangerous, Terry simply does not allow an officer to conduct a search in an attempt to validate a belief that a suspect is carrying non-threatening contraband. See Adams, 407 U.S. at 146, 92 S.Ct. at 1923 (search merely for contraband or evidence of crime is not within permissible scope of Terry frisk); Dickerson, 508 U.S. at 378, 113 S.Ct. at 2138 (noting that Terry expressly refused to authorize evidentiary search). This is what occurred here. Accordingly, Officer Kopecki's search of Hall's pocket, which held the baggie that the officer suspected contained drugs but knew did not contain a weapon, unconstitutionally exceeded the scope of Terry. See Sibron, 392 U.S. at 64-65, 88 S.Ct. at 1903-04 (when officer's statement to defendant "you know what I am after" and other testimony revealed that officer searched defendant's pocket to determine whether it contained narcotics as officer suspected, protective search was not related to justification of protection of officer or others, and therefore, protective search was outside scope of Terry and narcotics seized from defendant's pocket should have been suppressed).
We recognize, of course, that the Superior Court found that Officer Kopecki's seizure of the baggie from Hall's pocket was constitutionally permissible under the plain feel doctrine. Given our finding that Officer Kopecki's search was outside the scope of Terry, however, we disagree with the Superior Court that the plain feel doctrine is applicable to this case.
In Minnesota v. Dickerson, 508 U.S. at 373-75, 113 S.Ct. at 2136-37, the United States Supreme Court adopted the so-called `plain-feel' doctrine and held that a police officer may seize non-threatening contraband detected through the officer's sense of touch during a frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent and the officer has a lawful right of access to the object. The Court emphasized, however, that such action is only permissible "so long as the officers' search stays within the bounds marked by Terry." Id. at 373, 113 S.Ct. at 2136. Here, we have already determined that Officer Kopecki's search to discern whether the baggie *662 in Hall's pocket contained drugs, as he suspected, is not within the scope of the protective search authorized by Terry. As Dickerson makes clear, the plain feel doctrine simply cannot be triggered to salvage a search, such as the one here, which was "not within the bounds marked by Terry."[5]
Thus, we find that Officer Kopecki unconstitutionally exceeded the scope of Terry when he searched Hall's pocket and seized the baggie of vials inside and consequently, that the narcotics found on Appellant Hall must be suppressed.
Turning to Commonwealth v. E.M., Appellant E.M. also argues that Corporal Meyers subjected him to a frisk without the requisite reasonable suspicion that he was armed and dangerous.[6] Contrary to this assertion, however, the record clearly demonstrates that Corporal Meyers properly subjected E.M. to a pat down for weapons. Corporal Meyers specifically testified that he noticed a bulge in E.M.'s front pocket which was characteristic of a semi-automatic weapon. It was this particularized fear that E.M. was carrying a weapon which led Corporal Meyers to conduct a protective frisk of E.M. to determine if the bulge was in fact a weapon. Thus, the record reflects that Corporal Meyers had the reasonable suspicion necessary to warrant a protective search of E.M.
E.M. further argues, however, that Corporal Meyers exceeded the scope of a permissible pat-down search and that the Superior Court erroneously relied on the plain feel doctrine in finding that the seizure of the "wad of money" and illegal drugs was constitutionally permissible. We agree.
As noted in the above discussion of Commonwealth v. Hall, Minnesota v. Dickerson held that police may lawfully seize non-threatening contraband from individuals detected by `plain feel' during the scope of a Terry frisk if the criminal character of the item felt is immediately apparent to the officer conducting the frisk. *663 Dickerson, 508 U.S. at 375-76, 113 S.Ct. at 2137. Our Superior Court has applied Dickerson's plain feel doctrine in several recent cases. See, e.g., Commonwealth v. Fink, 700 A.2d 447 (Pa.Super.1997), appeal denied, 552 Pa. 694, 716 A.2d 1247 (1998); Commonwealth v. Smith, 454 Pa.Super. 489, 685 A.2d 1030 (1996), appeal denied, 548 Pa. 647, 695 A.2d 785 (1997). See also Commonwealth v. Graham, 554 Pa. 472, 721 A.2d 1075 (1998) (opinion announcing judgment of the court) (adopting plain feel doctrine under Dickerson).
As noted in Graham, the Superior Court stated in Commonwealth v. Fink that the plain feel doctrine is only applicable if the incriminating nature of the contraband is immediately apparent. Graham, 721 A.2d at 1081; Fink, 700 A.2d at 450 (citing Dickerson, 508 U.S. at 375, 113 S.Ct. at 2136-37); see also Commonwealth v. Mesa, 453 Pa.Super. 147, 683 A.2d 643 (1996) (police officer may seize contraband during a Terry search if contraband is detected through officer's sense of touch and the contour or mass of the object makes its identity as contraband immediately apparent). Immediately apparent, as explained by the Fink Court, means that the officer conducting the frisk readily perceives, without further exploration or searching, that what he is feeling is contraband. Fink, 700 A.2d at 450; see also Dickerson, 508 U.S. at 378-79, 113 S.Ct. at 2138-39.
Applying these principles to the instant case, it is clear that Corporal Meyers did not "plainly feel" contraband when frisking E.M. Here, Corporal Meyers testified that, when he first came upon E.M., he noticed a bulge which was characteristic of a semi-automatic weapon. When he frisked E.M.'s outer clothing, however, Corporal Meyers specifically testified that he discovered that the bulge was not a gun or weapon.[7] Instead, Corporal Meyers testified that the bulge was soft and that he "felt that it may have been more contraband." N.T., 11/6/95, at 19. At no time did Corporal Meyers testify that it was "immediately apparent" to him that the bulge in E.M.'s pocket was contraband, but rather, only that he believed that the bulge "may" have been contraband. Further, the only testimony the officer gave specifically regarding the bulge felt in E.M.'s pocket was that it was "soft." He offered no testimony indicating what it was about the mass or contour of this soft bulge which would support a finding that the feeling of the bulge made it immediately apparent to him that the bulge was contraband. See Commonwealth v. Smith, 454 Pa.Super. 489, 685 A.2d 1030 (1996) (plain feel exception did not apply to contraband recovered during Terry frisk when record failed to indicate what it was about the envelope felt by officer that made it immediately apparent to officer that the envelope was contraband); In the Interest of S.D., 429 Pa.Super. 576, 633 A.2d 172 (1993) (when contraband is retrieved from individual's pocket during Terry frisk and officer is unable to give specific testimony regarding how the contraband felt, contraband must be suppressed). In fact, Corporal Meyers did not state what type of "contraband" he thought E.M.'s pocket may contain.
Similarly, in Commonwealth v. Mesa, 453 Pa.Super. 147, 683 A.2d 643 (1996), the officer came across a bulge in the defendant's pocket during a Terry frisk. The officer testified that the bulge was soft, and that although he knew it was not a weapon, he felt that the bulge may contain a controlled substance due to the "shape and form it was in." Id. 683 A.2d at 648. Based on this suspicion, the officer then *664 reached into the defendant's pocket and pulled out a large roll of cash, with a baggie containing marijuana wrapped up inside the cash. In finding that the search of Appellant's pocket was outside the scope of Terry, the Mesa court stated:
[The] record does not support the factual finding that [the] Detective recognized an object whose `contour or mass made its identity immediately apparent', especially when we consider the size and shape of the folded money and packet of marijuana.... [The] Detective gave general testimony that the bulge felt like a controlled substance, but he never provided specific testimony as to why the `shape and form' of the bulge warranted an intrusive search into appellant's pocket.
Mesa, 683 A.2d at 648 (citations omitted). Thus, the court found that absent testimony that the officer felt a weapon or identifiable contraband, there was no probable cause to justify the search into the defendant's pocket. Id.
As in Mesa, the record in the instant matter does not support a finding that the object felt during the frisk of E.M. was immediately apparent to Corporal Meyers as contraband. In order for the plain feel doctrine to apply under Dickerson, which specifically requires that the criminal nature of the object be immediately apparent to the officer conducting the frisk, we agree with the Mesa court that an officer must do more than testify as to his general suspicion that a bulge may have been contraband and offer, as substantiation, that the `mass' of the bulge was soft.[8] Since this is all the record supplies in the instant case, we cannot find that it was "immediately apparent" to Corporal Meyers that the bulge felt in E.M.'s pocket was contraband.[9]
Thus, when Corporal Meyers reached into E.M.'s pocket because he thought the soft bulge he felt "may" have been some type of contraband, and subsequently recovered a large roll of cash, he was acting outside the scope of a legitimate Terry frisk. Since the pat down failed to establish probable cause to believe E.M. was carrying either a weapon or other identifiable contraband, the subsequent search of E.M.'s other pockets, which resulted in the discovery of the packet of aluminum foil containing what appeared to be acid tabs, a glassine packet of pills and a pocket pager, was likewise unconstitutional. As stated by Judge Schiller in his dissent:

*665 [O]nce the officer determined that the bulge was not a weapon, and was not contraband, he had no authority to conduct a search because he had no probable cause justifying such a search. Thus, everything obtained thereafter should have been suppressed. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Slip Op., No. 541 (Pa.Super., Dec. 12, 1995) (Schiller, J., dissenting).
For the reasons outlined above, we find that the lower courts erred in denying Appellant Hall's and Appellant E.M.'s suppression motions. Accordingly, the Orders of the Superior Court are reversed.
Justice ZAPPALA files a concurring opinion.
Justice CASTILLE files a concurring and dissenting opinion in which Justice NEWMAN joins.
CASTILLE, Justice, concurring and dissenting.
I concur with the reasoning of the majority in Commonwealth v. E.M but must dissent from the majority's holding in Commonwealth v. Christopher Hall. In my view, the holding of the majority in Hall amounts to an unwarranted expansion of this Court's holding in Commonwealth v. Banks, 540 Pa. 453, 658 A.2d 752 (1995)(Castille, J., dissenting). With all due respect to the doctrine of stare decisis, I believe that the Banks decision was the nadir in the history of this Court's search and seizure jurisprudence. Consequently, I am constrained to dissent from a decision which expands the holding in Banks and fails even to acknowledge that it is doing so.
It is instructive to begin with fundamental precepts regarding the concept of "probable cause"precepts which this Court recently has tended to overlook. Probable cause is present when there is reasonably trustworthy information which warrants a reasonable person in the belief that the suspect has committed or is committing a crime. Commonwealth v. Rodriguez, 526 Pa. 268, 585 A.2d 988, 990 (1991). The United States Supreme Court has stated: "[p]erhaps the central teaching of our decisions bearing on the probable cause standard is that it is a practical, nontechnical conception." See Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (quoting Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Quoting Chief Justice John Marshall, the Court added that probable cause means "less than evidence which would justify condemnation ... it imports a seizure made under circumstances which warrant suspicion." See id. at 235, 103 S.Ct. 2317 (quoting Locke v. United States, 7 Cranch 339, 348, 11 U.S. 339, 3 L.Ed. 364 (1813)). In elaborating further on the probable cause standard, the Court noted: "Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the sameand so are law enforcement officers." Id. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. Id. (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). What may initially appear to be innocent behavior frequently will provide a basis for a showing of probable cause; to require otherwise would be to sub silentio impose a far more rigorous definition of probable cause than the security of our citizens demands. Illinois v. Gates, 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
In Banks, supra, the issue was whether the officer had observed conduct which gave rise to probable cause for an arrest. The officer had observed the defendant, in the middle of the afternoon, hand an unidentifiable object to an unknown female who, in turn, gave appellant an undetermined amount of cash. When the officer's *666 patrol car drew near, the appellant attempted to flee, but was subsequently apprehended. In stating that these facts fell "narrowly short" of establishing probable cause, the Banks Court emphasized that the officer was not a trained narcotics officer and that the containers he observed were not commonly known to hold drugs. Id. at 455, 658 A.2d at 753. By way of contrast, the Banks Court cited with approval a leading Superior Court decision, Commonwealth v. Burnside, 425 Pa. Super. 425, 625 A.2d 678 (1993), in which probable cause was found where the officer had observed the defendant on the street at night holding blue plastic packets typically used to store narcotics and the defendant, upon seeing the officer, put the packets in his pocket and walked away.
Here, in addition to the suspicious exchange of small items for cash coupled with flight, which in the view of a majority of this Court fell "narrowly short" of establishing probable cause in Banks, the following factors were also present: (1) the officer saw appellant holding a plastic baggie of the same type which the officer, on many previous occasions, had seen used as a storage container for drugs, unlike the innocuous container at issue in Banks; (2) the officer, who was trained in detecting and investigating narcotics trafficking, had personally made narcotics arrests at that same exact location in the recent past, unlike the inexperienced officer in Banks; (3) the officer observed a three-person transaction, directed by appellant, involving the use of hand signals, rather than the simple two-person exchange observed in Banks; (4) this quick and surreptitious exchange occurred in a high-crime area at 12:30 a.m., unlike the mid-afternoon exchange in Banks; (5) following the transaction, upon seeing the police, appellant immediately concealed the baggie which he had been holding and then fled; (6) pursuant to what the majority acknowledges was a lawful patdown for the officer's own protection, the officer felt something which was "bulky" and "crunchy" in Hall's left pocket, which, based on his past experience, felt like vials of crack.
In sum, the factors which the Banks Court held to be necessary to establish probable cause were present here, and the factors which were present in Burnside the Superior Court case cited with approval by the Banks Courtwere present here. Indeed, additional suspicious factors not even contemplated by the Banks Court were present here, such as the fact that appellant actually felt what he reasonably believed to be crack vials in appellant's left pocket, and the fact that appellant was directing a transaction between two other individuals. In this regard, it is important to note the sequence of events observed by the officer here: (1) the two men standing a few feet from appellant were looking at him as he held out his plastic baggie towards them; (2) appellant motioned to the two men with his free hand; (3) one of the two men then handed the other small items which fit into the palm of his hand, while the other handed him United States currency in return. The advantages of conducting illegal narcotics transactions in this manner are widely understood by the law enforcement community. When a seller maintains a small inventory of narcotics while conducting the actual transactions with customers and the "bagman" maintains the principal stash, if the seller is apprehended, he will be caught with only a small amount of drugsperhaps not enough to qualify for a mandatory minimum sentence. Also, as the seller is generally the immediate focus of attention, the bagman may be able to escape with the drug supply in the event that the customer is an undercover officer, since apprehending two individuals is obviously more difficult than apprehending one. Because probable cause determinations must be made "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement," Gates, supra, the officer here was entitled to be even more suspicious on the basis of his observations of this orchestrated, three-person transaction.
*667 Notwithstanding that the facts present in this case overwhelmingly support the conclusion that probable cause existed under this Court's jurisprudence, appellant argues that the absence of certain other factors rendered probable cause absent. Specifically, appellant points to the fact that police did not receive anonymous tips that drugs were being sold from the location at issue, nor did police witness a series of transactions. Appellant fails to explain how the police could have witnessed a series of transactions when he fled at the sight of them, or why an anonymous tip was necessary when the officer here had personally observed illegal narcotics trafficking from the location at issue. In any event, an infinite number of circumstances can contribute to a finding of probable cause, only a handful of which need be present in any given case.
While appellant is full of ideas concerning what factors the officer failed to observe, I believe it is more instructive that neither appellant nor the majority make any suggestion as to what innocent activity it was that the officer did observe at 12:30 a.m. on a street corner behind the Rose Electric supply yard, if it was not an illegal narcotics transaction. Certainly it was not a covert midnight sale for Rose Electric of miniature light fixtures for doll houses. Nor would one reasonably suspect that appellant was working around the clock and insisting on cash payments at this street corner for legitimate commercial activities in his climb up the corporate ladder. Perhaps the officer reasonably disregarded these alternative explanations which require a somewhat myopic view of the facts and, instead, reasonably concluded that these circumstances were, in the words of Chief Justice Marshall, "circumstances which warrant[ed] suspicion." Locke v. United States, supra, 7 Cranch at 348, 11 U.S. 339, 3 L.Ed. 364 (1813). It is just possible that the officer did not defy the canons of reason in concluding that few businessmen, other than drug dealers, would set up shop on a desolate street corner in a high-crime area after midnight, distance themselves from their customers by using an intermediary to physically conduct sales and collect cash pursuant to surreptitious hand signals, then hide their wares and flee the scene when confronted with a police presence.
This decision troubles me for a number of reasons, not the least of which is my firm belief that it is rooted in misapplied law and unsound policy. The most troublesome reason, however, is that in Banks, this Court, while finding that probable cause had not been substantiated, attempted nevertheless to provide police officers in this Commonwealth a blueprint on how to substantiate probable cause in the future, by stating: "This is not a case where a trained narcotics officer observed either drugs or containers commonly known to hold drugs being exchanged." Banks, supra, 658 A.2d at 752, 540 Pa. at 454. Here, a police officer waited until his observations had satisfied this Court's own blueprint and then some, then initiated a search incident to arrest which uncovered a clear plastic baggie containing one hundred vials of cocaine. Yet this Court now pulls the rug out from under that officer's feet and tells him that it was unreasonable for him to believe that the suspect was committing or had committed a crime, such that probable cause would be substantiated under Commonwealth v. Rodriguez, supra, 526 Pa. at 272, 585 A.2d at 990 (1991). This sort of scattershot jurisprudence should alarm not only our law enforcement community, but also the citizens of this Commonwealth who rely on our law enforcement officers to enforce the law and keep them safea task which this Court renders exceedingly difficult with decisions such as this one. Accordingly, I respectfully dissent.
Justice NEWMAN joins this concurring and dissenting opinion.
ZAPPALA, Justice, concurring.
I join the majority opinion, except for the conclusion in Commonwealth v. Hall, *668 that Officer Kopecki possessed the reasonable suspicion necessary to justify a pat-down of Appellant-Hall. Under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), an investigatory stop is justified only if the "police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot...." 392 U.S. at 30, 88 S.Ct. 1868. If, during the course of a valid investigatory stop, the officer observes conduct on the part of the suspect which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons. Commonwealth v. Melendez, 544 Pa. 323, 676 A.2d 226, 228 n. 5 (1996); Commonwealth v. Berrios, 437 Pa. 338, 263 A.2d 342, 343 (1970); Terry, 392 U.S. at 27, 88 S.Ct. 1868.
Based on my reading of the facts of this case, I cannot agree that Officer Kopecki had the requisite reasonable suspicion to conduct an investigatory detention of Hall. The exchange of an unidentified item in a "high crime area," coupled with Hall's nervous behavior and flight in response to the appearance of Officer Kopecki, provides no reasonable basis to believe that Hall might have been engaged in the illegal sale of narcotics. See Commonwealth v. Cook, ___ Pa. ___, 735 A.2d 673, 679-80 (1999) (Dissenting Opinion of Zappala, J.).
Moreover, even assuming arguendo that the investigatory stop was justified, the record is devoid of any evidence indicating that Officer Kopecki had reason to believe Hall was armed and dangerous. The fact that "Hall's subsequent flight forced Officer Kopecki to confront Hall alone, in an alley, approximately forty feet away from his partner" (Majority Op. at 660), states a reason why the officer might be justifiably concerned if Hall was armed. However it supplies no articulable reasons to believe that Hall was armed and dangerous.
Despite my disagreement on these points, I join the holding in Hall that where there is reasonable suspicion to believe that criminal activity may be afoot and a limited pat-down for the search of weapons is supported by a reasonable belief that the suspect is armed and dangerous, "Terry simply does not allow an officer to conduct a search in an attempt to validate a belief that the suspect is carrying non-threatening contraband." (Majority Op. at 661). Further, I join the holding in Commonwealth v. E.M., that under the plain feel doctrine adopted in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the evidence seized from E.M. must be suppressed because the incriminating nature of the contraband was not immediately apparent. (Majority Op. at 662-65).
NOTES
[1] The two officers had been assigned to provide security during the football game.
[2] The tabs turned out to be some inert substance, and not LSD. The pills were Percoset and Toradol. N.T., 11/6/95, at 22.
[3] Although Hall claims that the search and seizure he was subjected to violated his rights under both the United States and Pennsylvania Constitutions, we need only reach his claim on federal constitutional grounds.
[4] Although we find that Officer Kopecki had reasonable suspicion to stop Hall for investigation, we reject the Commonwealth's argument that Officer Kopecki had probable cause to arrest Hall at this point. While Officer Kopecki testified that he observed Hall motion towards the other two males, he saw no transaction or conversations between Hall and those two men. Rather, he saw two people, other than Hall, exchange a small, unidentified item for cash. And although Hall was holding a plastic baggie with unknown contents and Officer Kopecki saw Hall place the baggie into his pocket and flee at the sighting of the police car, this does not rise to the level of probable cause. See Commonwealth v. Banks, 540 Pa. 453, 658 A.2d 752 (1995) (police officer's observation of defendant making single, street corner exchange of unidentified item for cash together with defendant's flight did not constitute probable cause to arrest); Commonwealth v. Malson, 434 Pa.Super. 155, 642 A.2d 520 (1994) (officer lacked probable cause to arrest defendant when officer, at approximately 9 p.m., observed defendant receive something green from an unknown man on corner in area where officer had made several previous drug-related arrests); Commonwealth v. Hunt, 280 Pa.Super. 205, 421 A.2d 684 (1980) (officer lacked probable cause to arrest defendant when officer received tip that several people were selling drugs in particular area, which was one in which officer had made several previous drug-related arrests, and officer proceeded to area and saw defendant make some sort of exchange with another person and defendant fled when approached by officer). In his dissenting opinion, Justice Castille proclaims his disagreement with our finding that Officer Kopecki lacked probable cause, noting his belief that "it is more instructive that neither appellant nor the majority make any suggestion as to what innocent activity it was that the officer did observe at 12:30 a.m. on a street corner behind the Rose Electric Supply Yard ..." We note that, contrary to any suggestion made by the dissent, neither Hall, as the defendant, nor this Court has any obligation in a suppression case to provide an explanation of what "innocent activity" an officer may or may not have seen the defendant engage in. Rather, the burden of proof is solely on the Commonwealth to establish that the circumstances justified seizing the defendant. See Pa. R.Crim.P. 323(h) (Commonwealth has burden of establishing that challenged evidence was not obtained in violation of defendant's rights).
[5] The Commonwealth argues, however, that the officer's frisk was not outside the scope of Terry under Dickerson because Dickerson holds that if an officer, while frisking an individual to determine if he is armed, feels an object whose mass or contour makes its criminal character immediately apparent, then the officer may seize that object. Dickerson, 508 U.S. at 375-76, 113 S.Ct. at 2137. The Commonwealth notes that here, Officer Kopecki testified that he grabbed and squeezed Hall's pocket, felt something "bulky, crunchy" and immediately recognized the baggie, based on his experience, as containing vials of drugs. The Commonwealth's argument, however, fails to recognize that Officer Kopecki testified that when he grabbed and squeezed Hall's pocket he was attempting to discern if the baggie contained drugs, and not whether the pocket contained a weapon. Nevertheless, the Commonwealth's argument fails for another reason. In Dickerson, the Supreme Court found that once the initial pat-down of an individual dispels the officer's suspicion that the individual is armed, any further search which manipulates (i.e. squeezes, pokes) the contents of a defendant's pocket is not authorized by Terry. Dickerson, 508 U.S. at 378, 113 S.Ct. at 2138-39; Commonwealth v. Graham, 721 A.2d at 1081; In the Interest of S.J., 713 A.2d at 53 (Cappy, J., concurring and dissenting) ("manipulation of any object detected during a pat down, once the officer is satisfied that the object is not a weapon, is unacceptable"). Here, Officer Kopecki specifically testified that he knew the baggie in Hall's pocket was not a weapon, but after "grabbing and squeezing" it, he knew it to be narcotics. N.T., 11/27/95, at 14, 17, 23. This manipulation, of course, is inappropriate under Dickerson. Therefore, the Commonwealth's argument that Officer Kopecki's seizure of the baggie of vials from Hall's pocket was constitutionally valid under Dickerson necessarily fails.
[6] E.M. also baldly asserts, but makes no developed argument in his brief, that the officers did not possess reasonable suspicion that criminal activity was afoot, so as to make the initial stop unconstitutional. See Commonwealth v. Shaw, 494 Pa. 364, 370 n. 3, 431 A.2d 897, 900 n. 3 (1981) (claims raised on mere assertions without adequate elaboration are deemed waived). Nonetheless, even if this claim was properly presented, we find no error in the lower courts' conclusion that the officers had sufficient facts to reasonably believe E.M. and O.T. were connected with criminal activity.
[7] Corporal Meyers testified:

Q: So you reached down and you patted this bulge in [Appellant's] pants, correct?
A [Meyers]: That's correct
Q: You knew at that point it wasn't a gun, right?
A: That's correct.
Q: You knew it wasn't a knife, is that correct?
A: Yes, sir.
N.T., 11/6/95, at 24.
[8] Here, the trial court found that once Corporal Meyers determined that the bulge was soft, he had probable cause to believe the bulge was the product of unlawful activity. We cannot agree. In fact, if we were to allow an officer to seize an object under such circumstances, we would in effect be ignoring the admonition of the Supreme Court in Dickerson that "where, as here, `an officer who is executing a valid search for one item seizes a different item,' this Court rightly `has been sensitive to the danger ... that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will." Dickerson, 508 U.S. at 378, 113 S.Ct. at 2138, quoting Texas v. Brown, 460 U.S. 730, 748, 103 S.Ct. 1535, 1546, 75 L.Ed.2d 502 (1983) (Stevens, J., concurring in judgment). Dickerson carefully circumscribes the application of the plain feel doctrine to situations where an officer, while lawfully conducting a Terry frisk for weapons, plainly feels an object that is immediately apparent to him as contraband. In order to remain within the boundaries delineated by Dickerson, an officer must be able to substantiate what it was about the tactile impression of the object that made it immediately apparent to him that he was feeling contraband.
[9] Moreover, even assuming that Corporal Meyers recognized the bulge in E.M.'s pocket as a large amount of cash, a large amount of cash is not, in and of itself, "per se contraband." See Mesa, 683 A.2d at 648 (stating that large amount of cash is not "per se contraband" and noting doubt that roll of cash could have contour or mass that would make it immediately recognizable as a controlled substance); Commonwealth v. Stackfield, 438 Pa.Super. 88, 651 A.2d 558, 562 (1994) (officer's testimony that he felt zip-lock baggie during Terry frisk did not support conclusion that officer felt item that he immediately recognized as contraband since baggie is not "per se contraband").