**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DERICK LAWRENCE, | : | |
| | : | |
| Appellant | : | No. 478 WDA 2020 |

Appeal from the Judgment of Sentence Entered February 12, 2020
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0013872-2017

BEFORE:   DUBOW, J., MURRAY, J. and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: JUNE 25, 2021**

Appellant, Derick Lawrence, appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County following his convictions of one count each of Possession with Intent to Deliver ("PWID"), Possession of a Controlled Substance, Improper Turn Signal, and Windshield Obstructions and Wipers.[1]  Appellant challenges the trial court's denial of his Motion to Suppress, the sufficiency of the evidence to convict him of PWID, and the legality of his sentence. After careful review, we affirm in part and vacate in part.

We summarize the relevant facts, as gleaned from the certified record, and the trial court's Pa.R.A.P. 1925(a) Opinion as follows. On October 24,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780–113(a)(30); 35 P.S. § 780–113(a)(16); 75 P.S. § 3334(a); 75 P.S. § 4524(b).

2017, Pittsburgh Police Detectives Louis Schweitzer and Scott Love initiated a traffic stop after Appellant failed to use a turn signal while initiating a right turn. When Appellant pulled over, Detective Love observed Appellant reach around inside his vehicle and move his arm over to the right side of his vehicle and then back to his waistband area. The detectives approached Appellant who appeared extremely nervous; his hands were shaking and he was sweating profusely. Appellant was unable to provide his driver's license. Based on Appellant's demeanor and movements, Detective Love believed that Appellant could have been attempting to harm himself or concealing a weapon and, therefore, the detectives removed Appellant from his vehicle.

Detective Love performed a *Terry*[2] frisk of Appellant to search for weapons, starting at Appellant's waistband. Immediately, Detective Love felt a knot tied at the top of a small plastic bag. He continued to pat the area and felt a hard, rock-like substance he believed to be crack cocaine. Based on his determination that Appellant was in possession of contraband, Detective Love pinned Appellant against his vehicle and detained him. Appellant told Detective Love that the bag contained pills, which Detective Love confirmed when he pulled the bag out of Appellant's waistband. At this point, Appellant's demeanor shifted and he was no longer sweating or nervously shaking.

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968) (holding that an officer may conduct a pat-down of a suspect's outer garments for weapons during the course of a valid investigatory stop if an officer observes unusual and suspicious conduct which leads him to reasonably believe that the suspect may be armed and dangerous); *see also Commonwealth v. E.M.*, 735 A.2d 654, 659 (Pa. 1999) (adopting *Terry* in Pennsylvania).

Subsequent lab tests revealed that the bag contained 75 methamphetamine pills, several of which were broken with jagged edges. The detectives searched Appellant's vehicle and recovered two cellphones. They subsequently obtained a warrant to search the contents of the phones. The Commonwealth charged Appellant with the aforementioned crimes the same day.

Appellant filed an Omnibus Pretrial Motion on March 13, 2018, supplemented on March 29, 2018, which included a Motion to Suppress arguing that the bag of pills was improperly seized. The court held a suppression hearing on July 17, 2018, at which Detectives Love and Schweitzer testified to the above facts. Detective Love further testified that upon patting Appellant's waistband area, he "immediately knew that [the bag] was packaged narcotics." N.T. Motion Hearing 1, 7/17/2018, at 19–21.[3] The court took the matter under advisement and denied Appellant's motion on August 29, 2018.

Appellant waived his right to a jury trial and proceeded to a bench trial on October 31 and November 26, 2019. In addition to testimony from Detectives Schweitzer and Love, the Commonwealth presented two expert witnesses: Christian Westbrook, a drug chemistry expert who tested the seized pills, and Detective Jed Pollack, an expert in narcotics and illegal controlled substances and trafficking thereof in the Pittsburgh and surrounding areas. Detective Pollack testified that, even if Appellant bought the

---

[3] The suppression hearing was conducted over two sessions on July 17, 2018, designated herein as Motion Hearing 1 and Motion Hearing 2.

methamphetamine pills at a discounted rate, "75 pills … at a very conservative $15 a pill is still $1,100." N.T., 10/31/2018, at 110. Regarding the rate of consumption of methamphetamine pills, Detective Pollack stated, "I have never come across anyone who was addicted to [methamphetamines] … that was consuming four pills of methamphetamine on a consistent basis." *Id.* at 111. Based on the monetary value and quantity of the pills, as well as Appellant's conduct during the stop Detective Pollack concluded that Appellant possessed the methamphetamine with the intent to deliver to others.

Appellant testified and admitted to having the pills but denied that he intended to distribute them. He stated that he suffers from addiction and the pills were for his personal use. Sara Makin, a licensed professional counselor, testified on behalf of Appellant that she assessed him and determined that he had a "severe addiction" to methamphetamine. N.T., 10/31/2018, at 28. She additionally opined that "it is very common for people who are addicted to methamphetamine to purchase in bulk." *Id.* at 27.

The trial court found Appellant guilty of all counts. On February 12, 2020, Appellant received the same sentence of four months to two years minus two days of incarceration, followed by two years of probation, for both possession of a controlled substance and PWID, to run concurrently. He received no further penalty on his remaining offenses. Appellant timely filed a post-sentence motion on February 21, 2020, which the trial court denied without a hearing on March 3, 2020.

Appellant filed a timely notice of appeal. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

1. Under the plain feel exception for warrantless **Terry** frisks, police can only retrieve items whose contraband nature is immediately apparent. Did the trial court err by denying suppression given the frisking officer's failure to immediately determine the presence of contraband on a first pat-down in violation of the plain feel exception based on the subsequent check of [Appellant's] person?

2. Whether the Commonwealth failed to present sufficient evidence of an intent to deliver based primarily on evidence of the amount of substance found without significant supporting evidence?

3. Should the convictions for [PWID] and possession of a controlled substance have merged under the Double Jeopardy clauses of the Pennsylvania and Federal Constitutions?

Appellant's Br. at 6 (suggested answers omitted).

**Denial of Appellant's Motion to Suppress**

In his first issue, Appellant contends that the trial court should have granted his Motion to Suppress and precluded evidence obtained when Detective Loved patted-down Appellant. Appellant's Br. at 18.

> We review the trial court's decision to deny a motion to suppress to determine whether [its] factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Further, because the Commonwealth prevailed before the suppression court, we may consider only evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. We are bound by the suppression court's findings where they are supported by the record, and we may reverse only if the court's legal conclusions are erroneous. Because this Court's

- 5 -

mandate is to determine if the suppression court properly applied the law to the facts, our scope of review is plenary.

*Commonwealth v. Milburn*, 191 A.3d 891, 897 (Pa. Super. 2018) (quotation marks and citations omitted).

Appellant does not challenge the legality of the underlying investigative detention and decision to pat-down Appellant, instead arguing that Detective Love's seizure of the bag of pills exceeded the scope of the permissible *Terry* frisk because it did not fall within the plain feel doctrine.[4] Appellant Br. at 18. Appellant contends that because Detective Love patted-down Appellant's waistband area a second time, the incriminating nature of the bag was not immediately apparent. *Id.* at 19–20.

> [A] police officer may seize non-threatening contraband detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object. [T]he plain feel doctrine is only applicable where the officer conducting the frisk feels an

---

[4] Often referred to collectively as a "*Terry* stop and frisk," the brief detention and pat-down of a suspect are distinct legal constructs. A law enforcement officer is justified in briefly detaining a suspect if "the detaining officer can point to specific and articulable facts which, in conjunction with rational inference derived from those facts, give rise to a reasonable suspicion of criminal activity[.]" *E.M.*, 735 A.2d at 659. To frisk a suspect, an officer must have reasonable suspicion that the suspect is armed and dangerous, and the pat-down "must always be strictly limited to that which is necessary for the discovery of weapons[.]" *Id.* Although Appellant challenged both the stop and frisk in his Rule 1925(b) statement, he does not raise those issues on appeal. Those abandoned claims are waived. *See Commonwealth v. Boxley*, 948 A.2d 742, 749 n. 7 (Pa. 2008) (refusing to address claims which appellant raised in his 1925(b) statement but subsequently abandoned in his brief to our Court).

object whose mass or contour makes its criminal character immediately apparent. Immediately apparent means that the officer readily perceives, without further exploration or searching, that what he is feeling is contraband. If, after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the immediately apparent requirement has not been met and the plain feel doctrine cannot justify the seizure of the object.

*Commonwealth v. Stevenson*, 744 A.2d 1261, 1264–1265 (Pa. 2000) (footnote and citations omitted).

The trial court determined that Detective Love was able to identify the contents of the knotted bag as contraband immediately upon patting Appellant's waistband. Trial Ct. Op., 7/24/2018, at 8. In finding that the nature of the contraband was immediately apparent, the court considered Detective Love's experience identifying drugs and his testimony describing feeling a "hard 'rock-like' substance" while performing the pat-down. *Id.*

Appellant attempts to characterize Detective Love's pat-down of Appellant's waistband as two searches: an initial pat during which Detective Love identified the knotted bag, and the subsequent check of the item that allowed him to determine the bag contained a "rock-like substance." Appellant's Br. at 18–20. He compares this case to the pat-down and seizure of containers of drugs in *Commonwealth v. Stevenson*, 744 A.2d 1261 (Pa. 2000), and *Commonwealth v. Stackfield*, 651 A.2d 558, 561 (Pa. Super. 1994), wherein appellate courts overturned orders denying suppression motions because it was not immediately apparent the objects felt by the officers were contraband. *Id.*

These cases, however, are inapposite. In **_Stackfield_**, this Court held that feeling a zip-lock baggie without feeling its contents does not meet the immediately-apparent test of the plain feel doctrine. 651 A.2d at 562. Similarly, in **_Stevenson_**, the officer felt "a cigarette or cigar" and a "similar object to a pill bottle" when patting down a suspect's jacket. 744 A.2d at 1265. The officer admitted that he could not feel any narcotics or other contraband as he did not feel the contents of the cigarette or bottle, rather he inferred that such objects often contain illegal substances. **_Id._** Our Supreme Court held that because cigars, cigarettes, and pill bottles "could be used for either legal or illegal substances," the seizure of the containers did not meet the plain-feel doctrine's requirement that the contraband nature of an object is immediately apparent. **_Id._** at 1266.

In this case, the trial court concluded that it was immediately apparent to Detective Love that Appellant had contraband inside the bag in his waistband. Trial Ct. Op., 7/24/2018, at 8. Unlike **_Stevenson_** and **_Stackfield_**, Detective Love felt the contents of the knotted bag, rather than solely the bag, when he patted down Appellant's waistband. Detective Love testified at the suppression hearing that he began his pat-down by patting the front of Appellant's waistband area, and "the first thing I actually felt was the top of the knot of the plastic baggie." N.T. Motion Hearing 2, 7/17/2018, at 2. He continued his pat-down, patting Appellant's waistband area again, at which time he felt the jagged substance he immediately believed to be illegal drugs.

*Id.* When asked if he manipulated the bag in order to identify its contents, Detective Love clarified that he "immediately knew it was packaged narcotics," which is why he proceeded to detain Appellant against his vehicle. *Id.* It was not until after detaining Appellant that Detective Love "manipulated the plastic baggy out of the top of his waistband" and saw that the bag contained pills, many of which were broken and had jagged edges. *Id.*

We agree with the trial court's conclusions that, although Detective Love's pat-down consisted of multiple touches or pats, he was able to feel plainly the contents of the bag and identify it as contraband. Accordingly, the trial court did not err in denying Appellant's Motion to Suppress and no relief is due.

### Sufficiency of the Evidence

In his second issue, Appellant contends there was insufficient evidence to establish that he possessed the methamphetamine pills with intent to distribute. *See* Appellant's Br. at 23–32. Appellant's claim is without merit.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). We review a sufficiency challenge *de novo*; our scope of review is limited to the evidence of record. *Commonwealth v. Robinson*, 128 A.3d 261, 264 (Pa. Super. 2015) (*en banc*).

The Commonwealth must establish each element of the crimes charged beyond a reasonable doubt. *Commonwealth v. Forrey*, 108 A.3d 895, 897

(Pa. Super. 2015). The fact-finder is tasked with determining the weight to be given the evidence and the credibility of the witnesses; the fact-finder may believe all, part, or none of the evidence. *Id.* We review the evidence, and all reasonable inferences derived therefrom, in the light most favorable to the Commonwealth as verdict-winner. *Commonwealth v. Maerz*, 879 A.2d 1267, 1269 (Pa. Super. 2005).

To establish PWID, "the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance [to another]." *Commonwealth v. Brown*, 904 A.2d 925, 931 (Pa. Super. 2006); *see also* 35 P.S. § 780–113(a)(30). The fact-finder may infer the intent to deliver from all the facts and circumstances surrounding a defendant's possession. *Commonwealth v. Jackson*, 645 A.2d 1366, 1368 (Pa. Super. 1994). It is well settled that a fact-finder may infer intent to deliver from possession of a large quantity of controlled substances. *Commonwealth v. Santiago*, 340 A.2d 440, 444 (Pa. 1975). Where the quantity of narcotics seized does not conclusively establish intent, other relevant circumstances include "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash found in possession of the defendant." *Jackson*, 645 A.2d at 1368 (citation omitted). Importantly, "[n]ot all of these factors must be present to prove intent to deliver a controlled substance, nor must they be given equal weight." *Id.* In addition, the fact-finder may consider admissible expert

testimony that the facts surrounding a defendant's possession are consistent with an intent to deliver. **Commonwealth v. Ariondo**, 580 A.2d 341, 350–51 (Pa. 1990) (citation omitted).

Appellant argues that he possessed the narcotics for personal use and did not intend to distribute them. In support of this argument, he emphasizes the lack of evidence of drug delivery paraphernalia, packaging materials, money, or firearms. Appellant's Br. at 25. Additionally, Appellant contends that the amount of pills and their associated cost fail to create an inference of intent to deliver because Appellant had the income necessary to purchase the pills and an addiction to methamphetamine. **Id.** at 23–26.

Our *de novo* review confirms that the Commonwealth presented sufficient evidence that police seized more methamphetamine pills from Appellant than a person would possess for personal use. Detective Pollack provided a comprehensive review of the typical user's consumption of methamphetamine pills and its price. N.T. Trial, 10/31/2019, at 8–14. He testified that the 75 pills seized from Appellant amounted to about an 18-day supply and would cost at least $1,100. Based on his experience, someone possessing that quantity for personal use would likely sell off a portion of the pills to offset the cost. **Id.** at 14. Detective Pollack opined that it is unlikely Appellant purchased pills in bulk to allot for personal use over the course of 18 days because individuals with addictions are unable to exercise the level of self-control required to resist binging. **Id.** at 15.

In addition to the high quantity and cost of pills, the Commonwealth demonstrated that other factors support the inference that Appellant possessed the pills with the intent to deliver. Detective Love testified that Appellant's demeanor was inconsistent with use or addiction to methamphetamines because, although Appellant was nervous leading up to his arrest, once he was arrested he was compliant, calm, and speaking normally. *Id.* at 73. Based upon observations he has made through his involvement in thousands of drug arrests, Detective Love testified that Appellant lacked certain physical attributes—namely, open sores—that are associated with methamphetamine addiction. *Id.* Although Appellant presented conflicting evidence asserting that he was addicted to methamphetamine, we view the evidence in the light most favorable to the Commonwealth as the verdict winner. Accordingly, the evidence was sufficient to establish Appellant's intent to deliver a controlled substance.

**Illegality of Sentence**

In his final issue, Appellant avers that the trial court imposed an illegal sentence. Appellant's Br. at 33. Appellant argues that his conviction for Possession of a Controlled Substance should merge with his PWID conviction. *Id.*

Whether an appellant's convictions merge for sentencing is a question implicating the legality of his sentence; our standard of review is *de novo* and

the scope of our review is plenary. ***Commonwealth v. Bernard***, 218 A.3d 935, 942 (Pa. Super. 2019).

Appellant correctly asserts that Possession and PWID merge for sentencing purposes if both charges stem from the same act of possession. Appellant's Br. at 34; ***see Commonwealth v. Murphy***, 592 A.2d 750, 753 (Pa. Super. 1991) ("The trial court should have merged for sentencing purposes the crimes of possession of controlled substances and possession with intent to deliver since both charges stemmed from the same act of possession."). Pursuant to the Sentencing Code, merger takes place when "crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense." 42 Pa.C.S. § 9765. Here, Appellant's convictions arose from the same act of possessing the bag of pills. The Commonwealth concedes the validity of Appellant's merger claim. Commonwealth Br. at 18.

For the foregoing reasons, we vacate Appellant's judgment of sentence for Possession. Since the trial court imposed identical concurrent sentences, our result does not disturb the trial court's overall sentencing scheme. We therefore need not vacate the entire sentence and remand for resentencing.

Judgment of sentence affirmed in part and vacated in part.

Judge Murray joins the memorandum.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/25/2021