J-S72012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM RAUCH, | |
| Appellant | No. 217 WDA 2014 |

Appeal from the Judgment of Sentence Entered December 9, 2013
In the Court of Common Pleas of Clearfield County
Criminal Division at No(s): CP-17-CR-0000251-2013

BEFORE:  BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:            **FILED DECEMBER 08, 2014**

Appellant, William Rauch, appeals from the judgment of sentence of an aggregate term of 8-16 years' incarceration, following his conviction for robbery and related offenses.  Appellant alleges numerous instances of evidentiary, constitutional, and procedural error. He also challenges the sufficiency of the evidence supporting his conviction, as well as the discretionary aspects of his sentence.  After careful review, we affirm.

The underlying facts of this case are not complicated, and were summarized by the trial court as follows:

> This case was initiated by the filing of a Criminal Complaint on April 5, 2013 by Patrolman Ralph Nedza of the Clearfield Borough Police Department.  Said Complaint alleged that [Appellant] robbed, at knifepoint, the Domino's Pizza, located in

---

[*] Retired Senior Judge assigned to the Superior Court.

the Borough of Clearfield, Pennsylvania, on April 4, 2013. It was purported, and ultimately established at [Appellant's] trial, that [he] had entered the pizza shop bedecked in a gray "hoodie" sweatshirt, a knitted hat made into a mask, and blue jeans with a gold embroidery embellished on the back pocket. After entering into Domino's, [Appellant] wielded a green-handled knife, approximately four … inches in length, and demanded money from the store manager. While brandishing the knife approximately one … foot away from the manager, [Appellant] arrogated that the manager turn over all of the currency contained in the store's cash register. The manager, fearing for her life, complied with [Appellant's] nefarious demand by handing over the monies, which was comprised of numerous one … and five … dollar bills.

Multiple Domino's employees witnessed the hold-up, and the business surveillance system recorded, both visually and audibly, the robbery. The employees immediately reported the incident to law enforcement. After receiving news of the crime, officers were dispatched to canvass the area surrounding the pizza joint. Officers quickly found [Appellant] walking in the vicinity and stopped [him] to inquire about the robbery. When the policemen observed [Appellant], he was wearing the same embroidered pants observed at the crime scene and a black tee-shirt. After arresting [Appellant] for an unrelated crime,[1] it was later revealed that [he] was the same individual who earlier robbed the Domino's Pizza.

The police also discovered the articles of clothing, worn in the robbery, and the knife, displayed to the store manager, abandoned behind a building close to where [Appellant] was apprehended. Some of the articles were later determined to have [Appellant's] DNA present on them. Police also found a large amount of low-denominational currency on [Appellant's] person after he was arrested.

Trial Court's Pa.R.A.P. 1925(a) Opinion (TCO), 4/28/14, 1-2 (footnote omitted).

_____

[1] Appellant was initially arrested for public drunkenness.

On April 17, 2013, the Commonwealth filed a criminal information charging Appellant with nine offenses, including three counts of robbery, and one count each of terroristic threats, simple assault, theft by unlawful taking, receiving stolen property, harassment, and disorderly conduct. Appellant filed several pre-trial motions, discussed in greater detail *infra*, which were ultimately denied by the trial court. On September 11, 2013, while some of those motions were still being considered, the Commonwealth filed an amended criminal information. The amended information contained a new total of twenty-three offenses, all of which pertained to the events surrounding the robbery of the Clearfield Domino's Pizza store. Ostensibly, this was done to comply with the dictates of **Alleyne v. United States**, 133 S.Ct. 2151 (2013) (holding that any fact that serves to increase a mandatory minimum sentence must be proven to the factfinder beyond a reasonable doubt).

Following Appellant's trial, which was held on October 16-18, 2013, the jury found him guilty of all twenty-three counts. Appellant was sentenced on December 6, 2013, to term of 8-16 years' incarceration for robbery, concurrent terms of 1-2 years' incarceration each for terroristic threats and simple assault, and no further penalty for all remaining counts. Appellant filed timely post-sentence motions, which were denied after a hearing. Appellant then filed a timely notice of appeal on February 4, 2014. On February 5, 2014, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement (concise statement), and he complied in a timely fashion

on February 25, 2014. The trial court issued its Rule 1925(a) opinion on April 28, 2014.

Appellant now presents the following questions for our review:

I. Whether the [trial court] erred when, on July 9, 2013, it determined it was unable to rule on the portion of … Appellant's Omnibus Pre[-]trial Motion relating to the suppression of DNA reports[?]

II. Whether the [trial court] erred when, on July 9, 2013, it dismissed the portion of … Appellant's Omnibus Pre[-]trial Motion relating to the suppression of DNA evidence due to a faulty DNA swab of … Appellant[?]

III. Whether the [trial court] erred when, on July 9, 2013, it dismissed the portion of … Appellant's Omnibus Pre[-]trial Motion relating to the suppression of video surveillance[?]

IV. Whether the [trial court] erred when, on July 9, 2013, it dismissed the portion of … Appellant's Omnibus Pre[-]trial Motion relating to a change in venue[?]

V. Whether the [trial court] erred when, on or about September 11, 2013, it permitted the Commonwealth to amend the [c]riminal [i]nformation, at which time the Commonwealth added additional counts against … Appellant, exceeding the Lower Court's order and violating … Appellant's due process rights under the Constitutions of the United States and Pennsylvania[?]

VI. Whether the [trial court] erred when, on September 24, 2013, … it denied a portion of … Appellant's Motion to Suppress Evidence relating to the suppression of audio recordings[?]

VII. Whether the [trial court] erred when, on September 24, 2013, … it denied a portion of … Appellant's Motion to Suppress Evidence relating to the suppression of evidence seized as a result of an invalid search and seizure[?]

VIII. Whether the [trial court] erred when, on October 11, 2013, it denied … Appellant's Motion to Suppress DNA Evidence/Report[?]

IX.    Whether the [trial court] erred when, during … Appellant's criminal jury trial on October 16, 2013, it allowed the testimony of Clifford Warner by overruling an objection made by the Defense, the objection being based in a lack of personal knowledge and/or relevancy[?]

X.    Whether the [trial court] erred when, on October 18, 2013, it accepted a guilty verdict of the jury despite a lack of sufficien[t] … evidence presented by the Commonwealth[?]

XI.    Whether the [trial court] erred when, on December 6, 2013, it sentenced … Appellant to a minimum term of incarceration of eight (8) years on the count of Robbery …, which exceeded … Appellant's standard guideline range [sentence] of seventy-eight (78) to ninety (90) months[?]

XII.    Whether … Appellant was improperly arraigned in accordance with the Pennsylvania Rules of Criminal Procedure[?]

XIII.    Whether … Appellant was illegally detained as a result of an improper arrest[?]

XIV.    Whether … Appellant's trial was not commenced within one-hundred and eighty (180) days in accordance with Pa.R.C[rim].P. 600[?]

Appellant's Brief at 8-9.

Appellant's first two claims concern the trial court's denial of his June 11, 2013 pre-trial motion to exclude DNA evidence. We adhere to the following standard in reviewing Appellant's evidentiary claims:

The standard of review for a trial court's evidentiary rulings is narrow. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Hanford*, 937 A.2d 1094, 1098 (Pa. Super. 2007) (internal citations and quotation marks excluded). Moreover, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012), *appeal denied*, 62 A.3d 379 (Pa. 2013).

At the time Appellant filed his pre-trial motion, the DNA testing of the items found abandoned near the crime scene (the sweatshirt, knit cap, and knife) had yet to be completed. Nevertheless, Appellant proffered two reasons to exclude the results of those tests. First, he alleged that the items were photographed by police in close proximity to Appellant's wallet, cell phone, and other personal effects, which were each recovered directly from Appellant's person. Appellant continues to maintain that this provided an opportunity for his DNA to transfer to the items found near the crime scene. Second, Appellant contends that when a DNA swab was taken from him in the Clearfield County Jail, it was contaminated when the person taking the sample dropped the swab onto the floor of the jail. Appellant also alleges that that person was not wearing gloves when he performed the DNA swab.

Based on these allegations, Appellant sought to exclude any DNA tests resulting from the DNA swab and the DNA tests performed on the items found near the crime scene pursuant to Pa.R.E. 403. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. Appellant argues that the trial court erred when it denied his pre-trial motion to exclude this evidence because the alleged contamination would render any resulting DNA testing results "unreliable, [and] … would serve to mislead the jury, which would naturally give a great deal of weight to an expert report, and would serve to confuse the issues since the report would be presented to the jury as a fact." Appellant's Brief at 19.

On July 9, 2013, the trial court held a hearing to address Appellant's June 11, 2013 pre-trial motion. At that hearing, Deputy Gregory Collins testified that he had taken the DNA swab in question from Appellant at the Clearfield County Jail in April of 2013. He stated that he wore gloves when he took the DNA swab from Appellant's mouth. He admitted that he or Appellant dropped the first swab; however, he stated that he "picked it up and threw it in the garbage." N.T., 7/9/13, at 5. Deputy Collins then obtained a new swab and took another sample from Appellant. He could not recall whether he changed his gloves at that time. However, he stated that he would not have touched the portion of the swab (the pad) that holds the saliva sample. He said, "I would have picked up the end that didn't have the saliva." *Id.* at 5-6. Deputy Collins also stated, "And once I retrieved the new swab, once you take that sample, that plastic slide covers that pad. There's no way that would have been contaminated at all." *Id.* at 6. The court did not hear any testimony concerning Appellant's allegation that the

evidence found near the scene had been contaminated by coming into contact with Appellant's personal effects when those items were photographed.

After the hearing, the trial court issued an order ruling that, *inter alia*, Appellant's motion regarding the exclusion of DNA tests of the sweatshirt, knit cap, and knife was premature because those results had yet to be produced. It was not known at that time whether the items found near the crime scene even contained Appellant's DNA. Instead, the trial court indicated that "[i]n the event a laboratory report indicating [Appellant's DNA was found on those items] is provided to the Defense, [Appellant] can re-raise this issue[.]" Order, 7/9/13, ¶ 1. This is the ruling targeted by Appellant's first claim of error.

We ascertain no abuse of discretion in the trial court's determination in this regard, and Appellant's argument to the contrary is undeveloped and unconvincing. He contends that any report, regardless of its results, was necessarily unreliable. However, Appellant fails to cite to any portion of the record that supports his factual contention that some form of cross-contamination occurred when the evidence found near the scene of the crime was purportedly photographed near the personal effects seized from his person. He also fails to state how he was prejudiced by the court's ruling, since he was afforded the opportunity to re-raise the same issue at a later time. Accordingly, we conclude that Appellant's first claim is without merit.

The trial court did reach the merits of Appellant's second claim, which is based upon the specific allegation that the swab taken from Appellant had been contaminated when it was dropped. Based on Deputy Collins' testimony, the trial court dismissed Appellant's attempt to prospectively exclude the DNA testing results based on the alleged contamination of the DNA swab that was taken from him. Appellant contends that this ruling was incorrect; however, he again provides an undeveloped argument to support this claim. The testimony provided by Deputy Collins appears to have resolved the matter, as it refutes Appellant's factual allegation regarding how the swab was purportedly contaminated. Appellant does not cite to any portion of the record contradicting that testimony, nor does he offer any legal citations that suggest the trial court's ruling constituted an abuse of discretion. Accordingly, we conclude that Appellant's second claim lacks merit.

Appellant's third claim concerns another issue raised in his June 11, 2013 pre-trial motion. Appellant sought to exclude video evidence taken from the Domino's Pizza's video surveillance system at the time of the robbery ("the video"). Appellant contends that the video should have been excluded because the Commonwealth failed to adequately establish a chain of custody. Specifically, Appellant asserts that "no testimony of how the disc [containing the video] was produced was offered [and], [thus,] a chain of custody was not established." Appellant's Brief at 21.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Moreover, "demonstrative evidence may be authenticated by evidence sufficient to show that it is a fair and accurate representation of what it is purported to depict which includes testimony from a witness who has knowledge that a matter is what it is claimed to be." *Commonwealth v. McKellick*, 24 A.3d 982, 988 (Pa. Super. 2011) (citing *Commonwealth v. Serge*, 896 A.2d 1170, 1177 (Pa. 2006), Pa.R.E. 901(a), and Pa.R.E. 901(b)(1)) (internal quotation marks omitted).

During the July 9, 2013 hearing, it was established that the video was sent to police in compact disc form from Domino's Pizza's regional office in Lock Haven, Pennsylvania. Appellant argues that "the person who actually produced the compact disc containing the video would be required [to testify] in order to establish the sanctity of the chain of custody." Appellant's Brief at 21. Appellant contends that "there is no evidence that the video recording sufficiently depicted the events that were the basis of this case." *Id.*

We disagree. The Commonwealth offered the testimony of a Domino's Pizza employee, Diane Thomas, who was at the scene of the robbery when it occurred. She testified that the video accurately depicted the events that occurred during the robbery. N.T., 7/9/13, at 15-16. This is sufficient evidence to establish that the video "is what it is claimed to be." *McKellick*,

24 A.3d at 988. Appellant fails to provide any argument or citation to any legal authority that suggests that Diane Thomas' testimony was insufficient to demonstrate the authenticity of the video. Accordingly, Appellant's third claim of error is without merit.

Next, in Appellant's final claim pertaining to his June 11, 2013 pre-trial motion, he asserts that the trial court erred when it denied his request for a change of venue. Appellant argues that biased local media coverage of his case prevented him from selecting a fair and impartial jury. The trial court denied Appellant's motion for a change of venue; however, it did so without prejudice to Appellant's ability to re-raise the claim if, during jury selection, he continued to believe that he could not obtain a fair and impartial jury. *See* Order, 7/9/13, ¶ 4.

Our standard of review in this matter is as follows:

Our cases make it clear that an application for a change of venue is addressed to the sound discretion of the trial court, and its exercise of discretion will not be disturbed by an appellate court in the absence of an abuse of discretion. In reviewing the trial court's decision, the only legitimate inquiry is whether any juror formed a fixed opinion of (the defendant's) guilt or innocence as a result of the pre-trial publicity. Normally, one who claims that he has been denied a fair trial because of prejudicial pre-trial publicity must show actual prejudice in the empaneling of the jury. But this rule is subject to an important exception. In certain cases there can be pre[-]trial publicity so sustained, so pervasive, so inflammatory, and so inculpatory as to demand a change of venue without putting the defendant to any burden of establishing a nexus between the publicity and actual jury prejudice, … because the circumstances make it apparent that there is a substantial likelihood that a fair trial cannot be had.

- 11 -

***Commonwealth v. Casper***, 392 A.2d 287, 291 (Pa. 1978) (internal citations, quotation marks, and footnotes omitted).

Appellant provides no argument in his brief, or any reference to supporting documentation in the record, demonstrating actual prejudice resulting from pre-trial publicity. However, Appellant does argue that he is not obligated to demonstrate actual prejudice, invoking the exception detailed in the above-stated standard. Nevertheless, we cannot deem the pre-trial publicity in this case "so sustained, so pervasive, so inflammatory, and so inculpatory" to relieve him of the burden of "establishing a nexus between the publicity and actual jury prejudice" when Appellant merely avers that "local media outlets present[ed] the contents of affidavits of probable cause as fact, resulting in the public opinion that … Appellant was already guilty." ***Id.***; Appellant's Brief at 23. Appellant fails to cite to any portion of the record supporting his averment. Appellant does not even name a single media outlet that publicized his case. Accordingly, we conclude that Appellant's change of venue claim lacks merit.[2]

_____

[2] Moreover, the trial court expressly permitted Appellant to re-raise his change-of-venue claim, without prejudice, if Appellant found that the jury pool had been tainted by the media coverage during *voir dire*. Appellant does not direct our attention to any portion of the record that establishes that he re-raised this claim. Appellant's failure to re-raise this claim, and his failure to offer any taint evidence, demonstrate that he was not prejudiced by the trial court's decision.

In his fifth claim, Appellant argues that the trial court abused its discretion when it permitted the Commonwealth to amend the criminal information. The Commonwealth filed a motion to amend the criminal information on August 9, 2013. That motion was granted on or about September 10, 2013, and the Commonwealth filed an amended information on or about September 11, 2013.

Pursuant to Pennsylvania Rule of Criminal Procedure 564, an information may be amended "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa.R.Crim.P. 564. The purpose of this rule is to "ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa. Super. 2006); *Commonwealth v. Hoke*, 928 A.2d 300, 303 (Pa. Super. 2007). The test to be applied when evaluating a challenge to an amended information was set forth in *Commonwealth v. Bricker*, 882 A.2d 1008, 1019 (Pa. Super. 2005) (citation omitted), as follows:

Whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

Relief is warranted only when the amendment to the information prejudices a defendant. *Commonwealth v. Roser*, 914 A.2d 447, 454 (Pa. Super. 2006), *appeal denied* 592 Pa. 788, 927 A.2d 624 (Pa. 2007); *Sinclair*, 897 A.2d at 1223.

- 13 -

> Factors to be considered when determining whether [an a]ppellant was prejudiced by the Commonwealth's amendment include whether the amendment changes the factual scenario; whether new facts, previously unknown to [the] appellant, were added; whether the description of the charges changed; whether the amendment necessitated a change in defense strategy; and whether the timing of the request for the amendment allowed for ample notice and preparation by [the] appellant. *Roser*, 914 A.2d at 454; *Sinclair*, 897 A.2d at 1223.

*Commonwealth v. Page*, 965 A.2d 1212, 1223-24 (Pa. Super. 2009).

In reviewing the record, this Court finds no indication that Appellant objected to the Commonwealth's amendment of the criminal information until he filed a post-sentence motion on December 16, 2013. This was not a last minute amendment. The Commonwealth filed its motion to amend the criminal information on August 9, 2013. The information was not amended until September 11, 2013, and Appellant's trial did not begin until October 16, 2013. Thus, Appellant had ample opportunity to file an objection to the amendment, despite his claim that the trial court granted it without a hearing. The heart of Appellant's claim is that the "increase in the number of counts is, in itself, prejudicial to … Appellant." Appellant's Brief at 25. Even if Appellant's assertion were true, it must also have been true 1) when the Commonwealth sought to amend the criminal information, 2) when the information was actually amended, and 3) when the trial commenced. Appellant provides no argument, whatsoever, regarding why he did not object to the amendment before his trial concluded. As noted above, part of the review of whether Appellant is prejudiced by an amendment to the criminal information is "whether the timing of the request for the

amendment allowed for ample notice and preparation by [A]ppellant." ***Id.*** at 1224. By failing to object to the amendment of the criminal information in a timely fashion, Appellant foreclosed on the trial court's opportunity to minimize or eliminate any resulting prejudice. In these circumstances, we conclude that Appellant waived his challenge to the Commonwealth's amendment of the information.

Appellant's sixth claim concerns the trial court's denial of his motion to suppress an audio recording of the robbery. Appellant argues that the recording should have been suppressed because it violated Pennsylvania's Wiretapping and Electronic Surveillance Control Act (WESCA), 18 Pa.C.S. § 5701 *et seq*. WESCA provides a statutory exclusionary rule for oral communications that fall within the purview of the act. 18 Pa.C.S. § 5721.1(b). Appellant contends the audio recording of the robbery constitutes an oral communication under WESCA and, furthermore, that no exception applies. The trial court ruled that the recording was not excludable under WESCA.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the

suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. McAdoo***, 46 A.3d 781, 783-84 (Pa. Super. 2012) (quoting ***Commonwealth v. Hoppert***, 39 A.3d 358, 361–62 (Pa. Super. 2012)).

WESCA defines an "[o]ral communication" as "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S. § 5702 (Definitions).

[I]n determining what constitutes an "oral communication" under the Wiretap Act, the proper inquiries are whether the speaker had a specific expectation that the contents of the discussion would not be intercepted, and whether that expectation was justifiable under the existing circumstances. In determining whether the expectation of non-interception was justified under the circumstances of a particular case, it is necessary for a reviewing court to examine the expectation in accordance with the principles surrounding the right to privacy, for one cannot have an expectation of non-interception absent a finding of a reasonable expectation of privacy. To determine the existence of an expectation of privacy in one's activities, a reviewing court must first examine whether the person exhibited an expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable.

***Agnew v. Dupler***, 717 A.2d 519, 523 (Pa. 1998).

Here, the trial court determined that Appellant

did not exhibit an expectation of privacy when he allegedly robbed the restaurant, nor would the expectation (if [Appellant] had an expectation of privacy) be one that society would be prepared to recognize as reasonable under the circumstances.

- 16 -

Moreover, [Appellant] had to anticipate that his conversation might have been intercepted in the store.

Trial Court Suppression Opinion, 9/24/13, at 2. Thus, the trial court concluded that Appellant's recorded statements were not an oral communication that fell within the purview of WESCA.

The lion's share of Appellant's argument, however, is dedicated to demonstrating that no exception applies to his invocation of WESCA. We need not reach those argument unless Appellant demonstrates that his statements were oral communications under WESCA. To do so, he must demonstrate a privacy interest in the recorded statement that is both general (one that society recognizes as reasonable) and specific (that he did not expect his statement to be intercepted).

In this regard, Appellant argues that there was no notice provided by the store that any conversation held therein was being recorded, and that there was no evidence that he even saw the surveillance camera. He suggests that these facts demonstrate that he had a reasonable expectation that his conversation would not be intercepted. However, we need not reach the question of whether Appellant had a reasonable expectation that his statements in the store would not be intercepted because we conclude that he had no reasonable expectation of privacy in any conversation he had in that location at all.

"We consider the totality of the circumstances and carefully weigh the societal interests involved when determining the legitimacy of such an expectation." *Commonwealth v. Duncan*, 752 A.2d 404, 409 (Pa. Super.

2000), *aff'd in part and remanded*, 817 A.2d 455 (Pa. 2003). One cannot reasonably expect that conversations of non-employees with employees in the lobby of a store open to the public are private communications. The location itself bears none of the hallmarks of areas where the expectation of privacy has been held to be reasonable, such as a home, hotel room, or personal vehicle. The lobby of the Domino's Pizza was accessible to the public and not the type of location where one would reasonably expect to be free of intrusion in their oral communications.

Moreover, there is nothing inherent in the nature or content of Appellant's recorded statements that suggests his reliance on a privacy interest in the store. Appellant was not an employee of the store, nor does the record suggest that he had any relationship with any of the store's employees. Furthermore, there is nothing analogous to a situation where "bank customers have a legitimate expectation of privacy in records pertaining to their affairs kept at the bank[,]" because Appellant was not in the store for the purposes of engaging in any legitimate transaction with the business. **Commonwealth v. DeJohn**, 403 A.2d 1283, 1291 (Pa. 1979).

Appellant contends that **Commonwealth v. Wright**, 25 Pa.D. & C. 4th 463 (Cumberland Co. 1994), supports his position. Whether it does or does not support his position is immaterial. **Wright** has no precedential value before this Court. Nevertheless, **Wright** is distinguishable as the recording at issue in **Wright** occurred in a common area of a hotel. We do not dispute that one may have a reasonable expectation of privacy in a hotel

hallway under certain circumstances. One could reasonably expect a greater degree of privacy in a hotel lobby than in a Domino's Pizza store lobby, being that the former acts as a temporary residence for its customers. Appellant was not staying at the Domino's Pizza overnight. He was not conducting a conversation immediately outside or adjacent to a location where there is a clear and legitimate privacy interest (a hotel room). Thus, even if the **Wright** case carried precedential weight with this Court, it is not sufficiently analogous to this case to demonstrate that the trial court erred in denying Appellant's WESCA-based motion to exclude. Accordingly, we conclude that Appellant's sixth claim lacks merit because he had no reasonable expectation of privacy in the lobby of a Domino's Pizza store that society is prepared to recognize as reasonable.

Appellant's seventh claim also concerns his August 1, 2013 suppression motion, wherein he asserted that the seizure of his wallet by police should have been suppressed as the fruit of an illegal search and seizure. The trial court held that a temporary seizure and search of Appellant's wallet that occurred prior to his arrest was justified under **Terry v. Ohio**, 392 U.S. 1 (1968). The trial court also held that the permanent seizure of the wallet was justified as the product of a search incident to Appellant's arrest for public drunkenness.

We note that:

> **Terry** specifically held that when an officer is justified in believing that the individual whose suspicious behavior he is investigating is armed and presently dangerous to the officer or

- 19 -

> to others, the officer may conduct a frisk of the suspect's outer clothing to determine whether the person is in fact carrying a weapon. **_Terry_**, 392 U.S. at 24, 88 S.Ct. at 1881; [**_Commonwealth v. Hicks_**, 253 A.2d 276, 279 (Pa. 1969)]. Since the sole justification for a **_Terry_** search is the protection of the police and others nearby, such a protective search must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." **_Terry_**, 392 U.S. at 26, 88 S.Ct. at 1882. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence. If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under **_Terry_** and its fruits will be suppressed.

**_Commonwealth v. E.M._**, 735 A.2d 654, 661 (Pa. 1999) (some internal citations omitted).

At the suppression hearing addressing this matter, the trial court heard testimony from Officer James Glass of the Lawrence Township Police. Immediately after the robbery of the Domino's Pizza, Clearfield Police contacted Officer Glass to assist in locating a male suspect observed fleeing from the Domino's Pizza. Soon thereafter, Officer Glass observed Appellant coming from the location of the Domino's Pizza, traversing a grassy area on the same trajectory from which the witnesses at the crime scene had indicated the robber had fled. Glass immediately recognized Appellant as "Billy Rauch." N.T., 8/13/13, at 19.

Because he was investigating an armed robbery, Officer Glass handcuffed Appellant while he conducted a pat-down for weapons. No weapons were discovered. However, Officer Glass indicated that when he was patting Appellant down, "I went to what I felt was a large object in his

left back pocket. I reached in, it was a billfold, a wallet, so I … pulled it out." *Id.* Officer Glass testified that the sole reason for retrieving Appellant's wallet and opening it was for identification purposes. When asked why he needed Appellant's driver's license when he already knew Appellant's identity, Officer Glass indicated that by giving a driver's license number to dispatch, he could quickly discover if Appellant was on probation or had any outstanding warrants. Officer Glass stated, "[j]ust me knowing that that's Mr. Rauch, doesn't give me the information that he didn't do something in [another county]…." *Id.* at 28. After he ran Appellant's driver's license number, Officer Glass returned the wallet to Appellant's pocket. During this encounter, Officer Glass noticed the odor of a "malt or brewed beverage coming from [Appellant]." *Id.* at 21. He also noticed that Appellant's speech was slurred. Furthermore, when Appellant was asked where he was going, he indicated that he was headed to a bar that Officer Glass knew had been closed for some time.

The trial court initially held that the temporary seizure and search of Appellant's wallet was justified under *Terry*; however, the court's reasoning for this is deeply flawed. The scope of a *Terry* pat-down is limited to a search for weapons. *E.M.*, 735 A.2d at 661; *Hicks*, 253 A.2d at 279 (finding an officer may frisk a suspect's outer clothing for weapons if he reasonably concludes that the person with whom he is dealing may be armed and dangerous); *Terry*, 392 U.S. at 27 (holding a frisk for weapons is justified if "a reasonably prudent man in the circumstances would be

warranted in the belief that his safety or that of others was in danger"). Additionally, under the plain feel doctrine, "an officer may also properly seize non-threatening contraband detected through the sense of touch during a protective frisk for weapons." **Commonwealth v. Zhahir**, 751 A.2d 1153, 1158 (Pa. 2000). However, such contraband may only be seized when "its incriminating nature is immediately apparent from its tactile impression; and the officer has a lawful right of access to the object." **Id.** at 1159.

Here, the temporary seizure of Appellant's wallet was expressly done for the purpose of obtaining Appellant's I.D., and thus it was not justified as a search for weapons under **Terry**. Nor is the seizure justified under the plain feel doctrine, because Glass did not seize the wallet because it felt like incriminating contraband. Glass seized the wallet because it was likely to contained Appellant's I.D.[3]

The court's reliance on **Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cnty.**, 542 U.S. 177 (2004), is unfounded. **Hiibel** did not involve the search or seizure of a person's personal effects for the

---

[3] We reject out of hand the trial court's statement that the "wallet was not searched or seized by … Glass, but merely used to identify the suspect." Trial Court Suppression Opinion, 9/24/13, 8. The undisputed testimony of Glass was that he removed the wallet from Appellant's back pocket and that Glass searched it for Appellant's driver's license. Moreover, the record also demonstrates that Appellant's identity was already known to Glass before his driver's license number was obtained from Appellant's wallet. Thus, at best, Appellant's wallet was searched in order to assist Glass in determining Appellant's probation status, or whether he had any outstanding warrants, but not in order to discover Appellant's identity.

purpose of identification during a *Terry* stop. Hiibel was convicted for not identifying himself during an otherwise valid *Terry* stop pursuant to a 'stop and identify' statute in effect in Nevada. The **Hiibel** Court held that a "state law requiring a suspect to disclose his name in the course of a valid *Terry* stop is consistent with Fourth Amendment prohibitions against unreasonable searches and seizures." **Hiibel**, 542 U.S. at 188. The Supreme Court did not sanction the seizure or search of a *Terry* stop target's wallet for the purpose of identification in **Hiibel**. Simply put, asking a pertinent question during a *Terry* stop, as was at issue in **Hiibel**, is not remotely analogous to police rifling through someone's personal effects in search of evidence to support a fact (Appellant's identity) already known to them at the time of the stop. Accordingly, we conclude that the trial court's determination, that the temporary search/seizure of Appellant's wallet for identification purposes was permitted under **Terry**, was erroneous.

Nevertheless, we believe the trial court's ultimate conclusion to deny suppression was justified. When Appellant was arrested for public drunkenness, Officer Glass had already returned his wallet to him. The later, permanent seizure of Appellant's wallet during his arrest for public drunkenness was legal pursuant to the search-incident-to-arrest exception to the warrant requirement. That "exception permits an arresting officer without a warrant to search an arrestee's person and the area within his immediate control only for personal property immediately associated with

the arrestee." *Commonwealth v. Stem*, 96 A.3d 407, 410 (Pa. Super. 2014).

Appellant argues that his arrest for public drunkenness "was pretexual" because Appellant was never charged with public drunkenness. Appellant's Brief at 32. However, Appellant does not cite any legal authority to support his contention, whereas the evidence at the suppression hearing adequately demonstrates that the police had probable cause to arrest him for that offense. Officer Glass testified that during his interaction with Appellant, he was able to determine by his training and experience that Appellant was under the influence of alcohol. Officer Glass said that he "could smell [the odor of a] malt or brewed beverage coming from him." N.T. Suppression, 8/13/13, at 21. He noticed that Appellant's speech was slurred. Furthermore, Appellant told Officer Glass that he had been drinking and indicated that he was headed to another bar, one which Officer Glass knew had been closed for some time. Officer Ralph Dale Nedza also participated in the arrest of Appellant. He indicated that "[w]hile speaking to [Appellant], I could s[m]ell an odor of intoxicating beverage on his person. He did have a slight slur in his speech and he appeared to be using the car from time to time to … keep his balance." *Id.* at 32.

The offense of public intoxication is defined by statute, in pertinent part, as follows: "A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance … to the degree that he may endanger himself or other persons or

property, or annoy persons in his vicinity." 18 Pa.C.S. § 5505. Here, Appellant was in a public place and intoxicated, as evidenced by what was observed directly by Officers Glass and Nedza, and by Appellant's own statements at the scene. Additionally, Appellant's statement to Officer Glass that he was headed to a bar that had been closed for some time, and Officer's Nedza's testimony that Appellant was using a car to keep his balance, both demonstrate that it was reasonable for the officers to believe that Appellant was intoxicated "to the degree that he may endanger himself or other persons or property…." 18 Pa.C.S. § 5505. Accordingly, we conclude that there was probable cause to arrest Appellant for public intoxication. As such, the seizure of Appellant wallet was legal as it was the product of a search incident to that arrest.[4]

Appellant's eighth issue concerns his October 10, 2013 motion to suppress DNA evidence, which he contends was erroneously denied by the trial court. In that motion, Appellant argued that he had insufficient time to prepare a defense because the report had been provided to him by the prosecution on October 2, 2013, and his trial was scheduled to commence on October 18, 2013. The trial court denied the motion. Appellant maintains that because of the delay in the production of the DNA results,

_____

[4] Notably, there was no evidence gleaned from the illegal but temporary seizure and search of Appellant's wallet during the preceding **Terry** stop that was used to justify Appellant's arrest for public intoxication.

which were submitted for testing in June of 2013, he "was forced to choose either continuing the trial and remaining incarcerated for additional months (since the delay would have been attributable to the defense), or proceed[ing] to trial without being able to prepare an adequate defense to the DNA expert['s] report...." Appellant's Brief at 38. The trial court denied the motion to suppress, reasoning that:

> A review of the record will show suppression of the DNA report was an inappropriate sanction under the circumstances. [Appellant] was on notice that the Commonwealth was awaiting the results of their DNA testing. On August 6, 2013, during argument on the Commonwealth's Motion to Continue, the Commonwealth asked this Court to continue [Appellant's] trial to allow it to receive the results of DNA testing sent to the state crime lab. The Commonwealth told the Court and [Appellant] that the information from the tests would be received in early October. The Court, on August 6, 2013, then predicted that [Appellant] would ask for a continuance to seek independent review of the results.
>
> The Court was willing to grant a continuance to allow [Appellant] to acquire analysis of the DNA report by an expert of his choosing. However, [Appellant] was unwilling to continue the trial and was adamant on having his trial on the dates previously fixed by the Court. Since [Appellant] was on notice that an incriminating report was going to be produced by the Commonwealth during the first week of October, 2013, the Court believed that suppressing the results of such report was inappropriate and unjust to the Commonwealth. [Appellant] could have also filed a [M]otion, at any point prior to the trial, seeking an independent examination and DNA analysis of the articles tested by the Commonwealth. [Appellant] declined to do so. Suppression, in this instance, was an unsuitable remedy: [Appellant] had other options at his disposal and refused to take those options.

TCO, at 10-11.

- 26 -

We ascertain no error in either the trial court's analysis or its conclusion. Appellant does not cite to any legal authority to support his claim, but instead makes a bald assertion that the trial court's denial of his motion to suppress violated his due process rights. Moreover, Appellant fails to describe how he was prejudiced beyond the incriminating nature of the DNA test results. Accordingly, we conclude that Appellant's eighth issue lacks merit.

Appellant's ninth claim concerns his objection to the testimony of the Commonwealth's witness, Clifford Warner (Warner). Warner testified that he owned a knife that was similar to the one found near the crime scene in this case. Warner said that he gave the knife to his cousin, Leah Coates, in the summer of 2012, less than a year before the robbery. Ms. Coates was Appellant's girlfriend at that time. Appellant complains that Warner's testimony should have been excluded as irrelevant and/or because Warner had no personal knowledge regarding whether Ms. Coates gave his knife to Appellant. The trial court concluded that Warner's testimony was relevant circumstantial evidence. The court found that Warner's testimony "demonstrated that the knife utilized in the commission of the crime had a connection to [Appellant]. Mr. Warner, on cross-examination, identified certain characteristics of the knife that made it unique." TCO, at 12.

Appellant complains that Warner had not yet testified regarding the unique features of the knife when he issued his objection. However, Appellant renewed his objection after Warner's testimony was completed.

Thus, at that time, it was clear that the unique features of the knife resolved Appellant's concerns regarding the relevancy of Warner's testimony. "Evidence is relevant if … it has any tendency to make a fact more or less probable than it would be without the evidence…." Pa.R.E. 401. Here, Warner's testimony tended to make it more probable that Appellant was the robber, because Appellant had access to the knife found abandoned with the clothing of the perpetrator after the robbery.

Furthermore, Warner's lack of personal knowledge regarding how and when the knife could have been transferred from Ms. Coates to Appellant was no impediment to Warner's testimony because Warner did not attempt to testify that such an exchange occurred. Warner had personal knowledge of the knife, its unique characteristics, and that he gave it to Ms. Coates. His lack of personal knowledge regarding the transmission of the knife to Appellant would only have prevented his testimony regarding such an exchange. Thus, Appellant's ninth claim also lacks merit.

Appellant's tenth claim is a challenge to the sufficiency of the evidence. To substantiate his claim, Appellant directs our attention to several inconsistencies in the Commonwealth's evidence. For instance, one witnesses testified that the robber's eyes were brown, whereas Appellant's eyes are blue. Another witness testified that the robber wore greenish blue jeans, whereas Officer Glass testified that Appellant was arrested in blue jeans. Finally, one witness testified that she did not see any tattoos on the robber's hands. Appellant does have tattoos on his hands.

Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

The discrepancies that exist with regard to some of the identity evidence does not render all the evidence of identity insufficient. Other identity evidence tended to establish Appellant's identity as the robber, including the discovery of Appellant's DNA on the clothing used by the robber and abandoned near the scene of the crime, the witnesses' descriptions of an embroidered design on the perpetrator's jeans that matched Appellant's jeans, and Appellant's connection to Warner's unique knife. Thus, Appellant's argument fails because it implicates the weight of the evidence establishing his identity as the robber, not the sufficiency of that evidence. The jury was free to weigh all the evidence regarding Appellant's identity and conclude that, despite some evidence to the contrary, the bulk of identity evidence established that Appellant was the robber beyond a reasonable doubt. *See Commonwealth v. Estepp*, 17

A.3d 939, 943-44 (Pa. Super. 2011) ("Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances."); *Id.* at 944 ("[T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.").

Next, Appellant challenges the discretionary aspects of his sentence. He contends that the trial court gave insufficient reasons for its departure from the standard guideline sentencing range. He argues that the reasons given – his criminal history and his use of a deadly weapon during the robbery – were already addressed by the guidelines.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hoch*, 936 A.2d 515, 517–18 (Pa. Super. 2007) (citation omitted).

Moreover, "[c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to appellate review as of right." *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006). Thus, before we reach the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902

and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 1410 [now Rule 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.*

Here, Appellant raised a sentencing claim in a post-sentence motion, however, he did not raise the same claim that he now presents on appeal. In his post-sentence motion, Appellant sought a reduction of his sentence because 1) he has two young sons; 2) his mother is in poor health and relies on him for support; and 3) he had no violent criminal history. Appellant's Post-Sentence Motion, 12/16/13, 4-5 ¶ 21. In his brief, however, Appellant claims that the trial court failed to place adequate reasons on the record for its departure from the standard guideline sentencing range. In these circumstances, we conclude that Appellant has not met the second criterion of the above-mentioned test. Consequently, he has waived his discretionary aspects of sentencing claim.

In Appellant's twelfth claim, he posits that he was not properly arraigned in accordance with the 10-day window prescribed by Pa.R.Crim.P. 571(A).[5] Appellant contends that this violated his due process rights under the United States and Pennsylvania Constitutions.

_____

[5] Rule 571(A) states that:

*(Footnote Continued Next Page)*

In Appellant's concise statement, he stated that he "was not properly arraigned in accordance with the Pennsylvania Rules of Criminal Procedure[.]" Appellant's Concise Statement, 2/25/14, at 2 ¶ 12a. The trial court found this claim lacked any merit because Appellant did "not articulate specifically how he was not properly arraigned, or how he was prejudiced by any purported defect in the arraignment process." TCO, at 16.

We agree with the trial court. Appellant's concise statement failed to specify the manner in which he was improperly arraigned or how he was prejudiced by that error. Accordingly, we conclude that the claim has been waived. **See** Pa.R.A.P. 1925(b)(4)(ii) ("The [concise statement] shall concisely identify each ruling or error that the appellant intends to challenge *with sufficient detail to identify all pertinent issues* for the judge.") (emphasis added); **and see** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯

> Except as otherwise provided in paragraph (D), arraignment shall be in such form and manner as provided by local court rule. Notice of arraignment shall be given to the defendant as provided in Rule 114 or by first class mail. Unless otherwise provided by local court rule, or postponed by the court for cause shown, arraignment shall take place no later than 10 days after the information has been filed.

Pa.R.Crim.P. 571(A).

Next, Appellant contends that he should not have been detained following his arrest for public drunkenness. He believes that his continued detention following that arrest was illegal under Pa.R.Crim.P. 519(B)(1).

As we previously concluded, Appellant's arrest for public drunkenness was supported by probable cause. Nevertheless, Rule 519(B)(1) provides that:

> (1) The arresting officer shall promptly release from custody a defendant who has been arrested without a warrant, rather than taking the defendant before the issuing authority, when the following conditions have been met:
>
> > (a) the most serious offense charged is a misdemeanor of the second degree or a misdemeanor of the first degree in cases arising under 75 Pa.C.S. § 3802;
> >
> > (b) the defendant poses no threat of immediate physical harm to any other person or to himself or herself; and
> >
> > (c) the arresting officer has reasonable grounds to believe that the defendant will appear as required.

Pa.R.Crim.P. 519(B)(1).

Appellant argues that because he was arrested for a summary offense, and because he met each of the three criteria set forth in Rule 519(B)(1)(a)-(c), he should have been immediately released from custody following his arrest. However, Appellant's argument in support of this claim amounts to less than one page, most of which is dedicated to quoting Rule 519(B)(1), and he fails to cite to any other controlling legal authority. Moreover, Appellant fails to state to what form of relief he is entitled. Indeed, even if Appellant had properly developed an argument that Rule 519(B)(1) was

violated in this case, and that his continued detention after his arrest was illegal, he would not be entitled to the suppression of any evidence seized incident to that arrest because the arrest itself was legal. Accordingly, we conclude that Appellant's thirteenth claim lacks merit.

Finally, Appellant claims that a Pa.R.Crim.P. 600 violation occurred in this case because his trial did not commence within 180 days. However, Appellant admits that the trial court's Rule 1925(a) "opinion is correct insofar as the remedy for the Rule 600 violation is presently moot…." Appellant's Brief at 46. Nevertheless, Appellant "wanted to present this violation to this Honorable Court as further evidence of how the [trial] [c]ourt and the Commonwealth violated his due process rights prescribed by the Constitutions of the United States and the Commonwealth of Pennsylvania." Appellant's concerns are duly noted, and we accept his concession that he is not entitled to relief on this claim.

Judgment of sentence **_affirmed_**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2014