**Commonwealth v. Lewis**

C.P. of Delaware County, no. 232-10.

*John F. X. Reilly,* for Commonwealth.
*William Wismer,* for defendant.

JENKINS, *J.,* July 28, 2010—Eric Lewis moved to suppress baggies of cocaine that a state corporal removed from Lewis' sweatshirt pocket during a traffic stop. The court suppressed this evidence, and the Commonwealth filed a timely appeal to the Superior Court.

The Commonwealth contends that the corporal had probable cause to arrest Lewis for fleeing or attempting to elude a police officer and therefore had the authority to seize the baggies in a search incident to arrest. There was no probable cause to arrest Lewis for fleeing or eluding, since he stopped his car just 40 seconds after the corporal activated his dome lights and siren. Absent probable cause to arrest, the corporal had no right to execute a search incident to arrest.

The Commonwealth also argues that the corporal had the right under *Terry*[1] and *Dickerson's*[2] "plain feel" doctrine to pat down Lewis' outer garments for weapons during the traffic stop and to seize items that he felt during the pat down whose incriminating nature was immediately apparent. When the corporal felt the baggies during Lewis' pat down, it could not have been immediately apparent that they were criminal contraband, because individuals frequently use bagging material for legal purposes.

For these reasons, the court recommends that its order granting Lewis' motion to suppress be affirmed.

## FACTUAL HISTORY[3]

The court found the following facts based on evidence adduced during a suppression hearing on April 13, 2010:

At approximately 2:50 a.m. on the morning of September 26, 2009, Corporal David Pezzano of the Pennsylvania State Police observed Lewis' vehicle on I-95 driving at a high rate of speed. Suppression Hearing (SH), 4/13/10, p. 10. Corporal Pezzano, who was alone in his

---

1. *Terry v Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

3. Although the court did not enter written findings of fact and conclusions of law after the suppression hearing, this opinion is the equivalent, because it details the evidence credited by the court at the suppression stage and examines the applicable law. *Commonwealth v. Stevenson,* 832 A.2d 1123, 1126 (Pa. Super. 2003) (citing *Commonwealth v. Reppert,* 814 A.2d 1196, 1200 (Pa. Super. 2002)) (where trial court does not enter findings of fact and conclusions of law, appellate court may look at trial court's Rule 1925(a) opinion to garner findings of fact and conclusions of law).

police cruiser, pursued Lewis' vehicle and caught up to it at the Avenue of the States exit. SH, pp. 10-11. A video recorder inside Corporal Pezzano's cruiser filmed his pursuit and subsequent stop of Lewis' vehicle. Exhibit DS-1.

Corporal Pezzano activated his dome lights near the top of the exit ramp at 2:52 a.m. Exhibit DS-1; SH, p. 11. Lewis turned right onto another street, and Corporal Pezzano turned on his siren at 2:52. Exhibit DS-1. Lewis slowly bore left with his turn signal on and turned right onto a four-lane highway. Exhibit DS-1. At 2:52, Corporal Pezzano drove up next to Lewis, who was still driving slowly, and directed him to "pull over." Exhibit DS-1; SH, p. 13. Lewis turned left onto a side street and stopped at 2:53, 40 seconds after Corporal Pezzano activated his siren. Exhibit DS-1. The corporal claimed that Lewis' car "lurched forward a little bit" and "looked like it was still actually in drive," SH, p. 17, but the videotape does not corroborate this testimony. Exhibit DS-1. The car remained in place after Lewis brought it to a stop. Lewis never attempted to escape. Exhibit DS-1.

The stop took place in an industrial area where there were no residences. SH, p. 14. Over the cruiser's public address system, the corporal instructed Lewis to place his hands outside the window where the corporal could see them. SH, p. 15. Lewis put both hands outside the window but then pulled his right hand back inside his car. SH, p. 15.

Concerned that Lewis was reaching for a gun, Corporal Pezzano approached Lewis' vehicle and told him to put his hands up. SH, pp. 15-16; exhibit DS-1. Lewis complied; the corporal saw that Lewis was not holding anything in his hands. SH, p. 17. Lewis exclaimed that

he did not stop his car immediately because he was calling his girlfriend and was scared. Exhibit DS-1. The corporal ordered Lewis to exit his car and stand against it with his hands on top. Exhibit DS-1.

The corporal had several concerns during this incident. Lewis appeared to have a "fight or flight mentality. . . not following verbal commands. He kept looking around, looking in the area." SH, p. 21. There was a group of people about 100 feet away whom the corporal feared might become belligerent due to his show of authority. SH, pp. 14, 21. There were no backup police officers to handle unruly behavior, because they were still en route to the scene. SH, pp. 14, 21.

The corporal patted Lewis down for several seconds and then handcuffed him. Exhibit DS-1. The position of Lewis' body obstructed any view of his left side or the corporal's left hand on the videotape. Corporal Pezzano testified about the pat down as follows:

"*Q.* [W]hat did you do after you took the defendant out?

"*Corporal Pezzano.* My initial reaction was to pat him down for my safety to make sure he wasn't trying to pull a weapon during his movements in the vehicle. So, I patted him down for a weapon.

"*Q.* Were you able to feel anything?

"*Corporal Pezzano.* Absolutely. Yes, I did.

"*Q.* What did you feel?

"*Corporal Pezzano. Well, I felt in his left side front sweater pocket, he had a . . . bulge of, like, a bag with . . . several small bags inside of that.*

"*Q*. And what did you believe that to be?

"*Corporal Pezzano: I believed it to be some sort of drug packaging.*

"*Q*. Have you had the opportunity in your experience to hold or feel sandwich bags with other small bags in them packaged for drugs?

"*Corporal Pezzano:* Yes, I have.

"*Q*. And when you touched the package . . . were you able to tell immediately what this was?

"*Corporal Pezzano.* I thought it was some sort of drug packaging. What type of drug, I wasn't exactly sure . . . .

"*Q*. D[id] you take that package out? What you believe[d] to be drugs, d[id] you take that out of his pocket at that point?

"*Corporal Pezzano.* No, I d[id] not.

"*Q*. And why not? What else [we]re you doing?

"*Corporal Pezzano.* I didn't take it out of his pocket. That wasn't my concern. My concern was to find something that would hurt me or to make sure he didn't have something that would hurt me . . . . SH, pp. 19-20. (emphasis added)

After feeling what he believed were baggies during the pat down, Corporal Pezzano walked Lewis to his patrol car, emptied his pockets, and seized the baggies of cocaine. SH, p. 21; exhibit DS-1.

In an order docketed on May 26, 2010, the court granted Lewis' motion to suppress all evidence seized during the traffic stop. On June 18, 2010, the Commonwealth filed a notice of appeal under Pa.R.A.P. 311(d),

certifying that the order terminated or substantially handicapped the prosecution. On July 15, 2010, the Commonwealth filed a timely statement of matters complained of on appeal.

## DISCUSSION

In an appeal from an order granting a motion to suppress, the appellate court:

"consider[s] only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. We must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. The suppression court's factual findings are binding on us and we may reverse only if the legal conclusions drawn therefrom are erroneous." *Commonwealth v. Hayes,* 898 A.2d 1089, 1091-92 (Pa. Super. 2006).

The Commonwealth asserts that Corporal Pezzano had probable cause to arrest Lewis for fleeing or attempting to elude a police officer and therefore had the authority to seize the cocaine in a search incident to arrest. The fleeing and eluding statute, 75 Pa.C.S. §3733, provides that a driver of a motor vehicle commits a misdemeanor (or sometimes a felony) if he "willfully fails or refuses to bring his vehicle to a stop, or . . . otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop."[4]

_____

4. The element of willfulness "is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a

240

Section 3733's purpose is to punish drivers who lead police officers on high-speed chases or who jump out of their cars and run away on foot. See *Commonwealth v. Scattone*, 448 Pa. Super. 533, 539, 672 A.2d 345, 348 (1996) (defendant violated section 3733 by leading four police cruisers with activated dome lights and sirens on two-three mile chase for five minutes). There do not appear to be any Pennsylvania decisions which hold that a momentary delay in stopping one's car runs afoul of section 3733. And for good reason: common sense indicates that momentary delay does not constitute willful failure or refusal to stop, flight, or attempt to elude a police officer.

When Corporal Pezzano activated his dome light and siren, Lewis merely made a few slow-speed turns with his turn signal on and stopped his car less than one minute later. There was no high-speed chase, refusal to stop, or attempt to escape. Corporal Pezzano did not have probable cause under these circumstances to arrest Lewis for fleeing or eluding. Cf. *State v. Coreano*, 2009 WL 2859163 (Del. Super. 2009) (Delaware officers did not have probable cause to arrest defendant for disregarding police officer's signal, where defendant drove at low rate of speed with his turn signal on and stopped less than one minute after officers made clear their intent to stop him). Absent probable cause to arrest, the search of Lewis' person was invalid. *Commonwealth v. Lovette*, 498 Pa. 665, 677, 450 A.2d 975, 981 (1982), *cert. denied,*

---

purpose to impose further requirements appears." 18 Pa.C.S. §304(g). A person acts "knowingly" with respect to a material element of an offense "when(,) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist." 18 Pa.C.S. §304(b)(2)(i).

459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983) (where probable cause to arrest does not exist in the first instance, any evidence seized in search incident to arrest must be suppressed).

The Commonwealth urges that if Corporal Pezzano lacked probable cause to arrest Lewis, he still had the right to frisk Lewis for weapons under *Terry* and seize the cocaine under *Dickerson's* plain feel doctrine. This argument does not succeed because Corporal Pezzano ventured beyond *Dickerson's* bounds.

A police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot. *Terry,* 392 U.S. at 30. If the officer reasonably suspects, based on specific and articulable facts, that the detained individual is armed and dangerous, the officer may frisk the individual's outer garments for weapons. *Id.* at 24. Since the sole justification for a *Terry* search is the protection of the officer or others nearby, a protective search must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Id.* at 26. The purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence. *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

The plain feel doctrine entitles the officer to seize non-threatening contraband during a *Terry* frisk detected through the officer's sense of touch if (1) the officer is lawfully in a position to detect the presence of contraband, (2) the incriminating nature of the contraband is immediately apparent from its tactile impression

and (3) the officer has a lawful right of access to the object. *Dickerson,* 508 U.S. at 373-75. The mass or contour of the object must make its criminal character immediately apparent. *Id.* at 375; *Commonwealth v. E.M.,* 558 Pa. 16, 32, 735 A.2d 654, 663 (1999). "Immediately apparent" means that the officer readily perceives, without further exploration or searching, that he is feeling contraband. *Id.* If, after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the immediately apparent requirement is not met, and the plain feel doctrine cannot justify seizure of the object. *Id.;* see also *Commonwealth v. Graham,* 554 Pa. 472, 485-86, 721 A.2d 1075, 1082 (1998).

Corporal Pezzano clearly had the right under *Terry* to order Lewis out of his car and pat down his outer garments to check for weapons, given Lewis' reckless driving on I-95, the nighttime traffic stop in an industrial area, Lewis' nervous demeanor during the stop, and his suspicious hand movements in and out of view. *Commonwealth v. Pratt,* 930 A.2d 561, 564 (Pa. Super. 2007) (following lawful traffic stop, officer may order driver to exit vehicle until the traffic stop is completed); *Commonwealth v. Cooper,* 994 A.2d 589, 592 (Pa. Super. 2010) (*Terry* permits police officer to conduct quick frisk for weapons if he reasonably fears that person with whom he is dealing may be armed and dangerous).

At the instant Corporal Pezzano touched the baggies, however, it could not have been immediately apparent to him that he was feeling contraband. An officer cannot satisfy the plain feel doctrine unless he can "substantiate what it was about the tactile impression of the object that made it immediately apparent to him that he was feeling

contraband." *Commonwealth v. Stevenson,* 560 Pa. 345, 357, 744 A.2d 1261, 1267 (2000) (citing *E.M, supra,* at 16 n.8, 735 A.2d at 664 n. 8). The "immediately apparent" standard is not met merely by feeling packaging material for drugs or zip-lock baggies in the defendant's pocket during a *Terry* frisk. *Commonwealth v. Stackfield,* 438 Pa. Super. 88, 651 A.2d 558 (1994). *Stackfield* observed:

"A zip-lock baggie is not per se contraband, although material contained in a ziplock baggie may well be. . . . The record supports a factual finding that the officer felt a mass that he recognized as a baggie; it does not support a factual finding that the officer felt what he immediately recognized as contraband. Sight unseen, the contents of the baggies that the officer felt in appellant's pants pockets could as easily have contained the remains of appellant's lunch as contraband." *Id.* at 96-97, 651 A.2d at 562; see also, S*tevenson, supra* (citing *Stackfield* with approval).

In view of *Stackfield,* Corporal Pezzano could not have immediately recognized the baggies in Lewis' pocket as contraband. He would have to have been clairvoyant to immediately recognize that the baggies contained drugs instead of perfectly legal items.[5]

---

5. For other decisions that provide analogous support for this decision, see *Stevenson, supra* at 354-55, 744 A.2d at 1266 (two cases consolidated for decision; "immediately apparent" test not met in first case when officer conducting *Terry* frisk for weapons felt cigar or cigarette and pill bottle, even if officer knew, from his experience in drug enforcement, that those objects could contain narcotics; in second case, "immediately apparent" requirement not met when officer felt three hard packages of folded paper or cardboard in change pocket of defendant's jeans, even though officer testified that he had previously

To be sure, the plain feel exception is satisfied when the officer feels both packaging material and drugs while patting down the defendant's outer garments. In *Commonwealth v. Parker,* 957 A.2d 311 (Pa. Super. 2008), the officer conducting the pat down felt two plastic bags in the defendant's cargo pocket with some "hard, rigid objects" that he believed were crack cocaine based on his training and experience. The Superior Court upheld the seizure of the drugs because the officer immediately identified the object he felt as contraband (packaged crack cocaine) before reaching into the defendant's pocket and looking at its contents. *Id.,* 957 A.2d at 316.

---

seen cocaine packaged in cardboard and that he knew packages contained cocaine by the feel of the bulge and package, since officer did not explain what it was about the mass or contour of particular package felt that led him to that conclusion; "immediately apparent" requirement not satisfied when officer merely feels and recognizes by touch an object that could be used to hold either legal or illegal substances, even when officer has previously seen others use that object to carry or ingest drugs); *E.M., supra* at 34, 735 A.2d at 664 n. 9 (even if officer recognized bulge in defendant's pocket as cash, cash is not per se contraband and therefore, not immediately apparent as contraband); *Commonwealth v. Thompson,* 939 A.2d 371, 377 (Pa. Super. 2007) (digital scale and cash not immediately apparent as contraband to officer conducting frisk, since there was no evidence as to the size, shape or hardness of objects officer felt during search); *Commonwealth v. Fink,* 700 A.2d 447, 450 (Pa. Super. 1997), *appeal denied,* 552 Pa. 694, 716 A.2d 1247 (1998) (officer felt object during pat down that resembled "a regular smoking pipe without the stem" and testified that in his experience, he had seen such pipes used for smoking marijuana; illegal nature of object not immediately apparent because pipes, though sometimes used to smoke marijuana, can also be used to smoke legal substances); *Commonwealth v. Mesa,* 453 Pa. Super. 147, 157, 683 A.2d 643, 648 (1996) (detective's testimony that he immediately knew bulge in suspect's pocket contained cocaine due to the "shape and form it was in" did not support finding that detective immediately recognized object as contraband).

Similarly, in *Commonwealth v. Bryant,* 866 A.2d 1143 (Pa. Super. 2005), the Superior Court found a search proper where the officer conducting the pat down immediately recognized the object as packaged drugs due to his experience in over 100 drug arrests and his familiarity with the packaging and feel of packaged drugs. *Id.,* 866 A.2d at 1147. *Parker* and *Bryant,* however, do not control the present case, since Corporal Pezzano only felt bagging material in Lewis' pocket as opposed to bagging material and drugs. Bagging material alone is not incriminating for the reasons stated above.

Therefore, the court concludes that Corporal Pezzano's seizure of cocaine did not result from a valid search incident to arrest or a valid frisk under *Dickerson.* The court recommends that its order granting Lewis' motion to suppress be affirmed.